José A. Ortiz, demandante y recurrente, *v.* Sucesión de J. Serrallés et al. y Fernando Banchs, demandados y recurrente el último.

*Número:* 279      *Resuelto:* 18 de noviembre de 1963

*José N. Dapena* y *Leopoldo Tormes,* abogados del recurrente; *Miguel A. Ruiz,* abogado del recurrido.

Sala integrada por el Juez Asociado Señor Belaval como Presidente de Sala y los Jueces Asociados Señores Santana Becerra y Rigau.

EL JUEZ ASOCIADO SEÑOR BELAVAL emitió la opinión del Tribunal.

El día 13 de septiembre de 1958, el recurrente Fernando Banchs, era mayordomo de la Colonia Esperanza de Wirshing & Compañía, y como tal mayordomo, tenía bajo su custodia cierto tractor que se utilizaba en el cultivo de caña, (T.E. págs. 141 y 147). El propio recurrente declara que durante la noche del 13 al 14 de septiembre de ese año, llegó a su casa un empleado de la compañía llamado Acisclo Laviera Gual y solicitó el permiso del recurrente para usar el tractor y sacar una pisicorre de Juan Rivera que se había atascado en una zanja. El recurrente autorizó al empleado Acisclo Laviera Gual a usar dicho tractor para hacerle el favor al señor Juan Rivera de sacar su pisicorre de la zanja. De regreso, el tractor tuvo una colisión con una motocicleta conducida por el recurrido José A. Ortiz, causándole daños tanto a la cosa como a la persona. Parece que se demandó a la Sucesión de J. Serrallés en la creencia que ésta era la dueña del tractor y la mandante

del mayordomo dentro de la teoría de la *culpa in eligendo*, o sea, la diligencia en la elección de la persona que ha de desempeñar ciertas funciones, con relación a la disposición de la cosa, propiedad de la mandante, que pueda causar daños a terceras personas.

Habiendo descartado la prueba, la posibilidad de una *culpa in eligendo*, por no haberse demandado a la persona jurídica que, en realidad de derecho, había nombrado al administrador, sólo nos queda estudiar la responsabilidad directa entre la tercera persona que recibe el daño y el administrador que violenta la regla paternal de la custodia de la cosa. En este caso, la falta de la diligencia del buen padre de familia, consistió en haberle permitido a una persona conducir un tractor por una vía pública, sin licencia para ello y sin tener la pericia necesaria, pues, si bien la prueba demostró que Acisclo Laviera Gual tenía experiencia en manejar el tractor dentro de las fincas de Wirshing & Compañía, no la tenía para conducirlo por una vía pública. Además hay ciertas indicaciones en la prueba que al momento de conducir el tractor, estaba bajo los efectos de bebidas embriagantes. La responsabilidad de la persona que realiza un acto de administración en exceso de su mandato, está claramente definida en la moderna glosa del Código Civil: Borrell Macia *"Responsabilidades derivadas de Culpa Extracontractual Civil"*, págs. 176–183 (2da. edición Bosch de 1958).

Descartando de dicho estudio las acotaciones marginales de Derecho comparado, jurisprudencia y textos extranjeros, pero haciendo uso de las propias palabras del autor, la conclusión doctrinal podría sintetizarse así: Las personas jurídicas, fruto de una abstracción, de una creación del derecho, no puedan actuar por sí mismas: siempre deben hacerlo por mediación de aquellas personas físicas que integran sus órganos, que son sus representantes legales; y, siendo esto así, parece que de una manera directa deben ser éstos los respon-

sables por los actos que se considera realizan en nombre de la persona jurídica.

Los órganos de éstas, las personas físicas que en su nombre actúan lo hacen por su mandato, ejercen una representación que les es concedida; y parece lógico que tal mandato, tal representación tan sólo alcance a las atribuciones que se les conceden, y en ningún momento puede estimarse que se les ha concedido facultades al margen de la ley, ya que incluso de haber sido así, la obligación de no cumplirlas sería evidente.

Por otra parte, puesto que las personas jurídicas se valen de la actividad de personas físicas, y reciben las ventajas que tal actuación les procuran, han de cargar también con las desventajas que, como contrapartida de aquel beneficio, puedan acarrearles la actuación dolosa o culposa de aquéllos (*qui sentit commodum, sentire debet incommodum*), porque si se entendiera que las personas jurídicas, por ser incapaces de culpa no contraen responsabilidades extracontractual, habría que admitir, congruentemente, que no pueden tampoco, por ejemplo, incurrir en mora en el cumplimiento de sus obligaciones convencionales, ni en el deber de indemnizar por incumplimiento del contrato, ni en ninguna de las demás responsabilidades contractuales derivadas de la culpa.

Ello no implica el que si una sociedad, por ejemplo, debe indemnizar a tercero, como consecuencia de daños y perjuicios causados por culpa o negligencia de sus representantes, de su gerente, de su Consejo de Administración, los accionistas que no hayan tomado parte en el acuerdo que es causa de la indemnización, a su vez la exijan para la sociedad, o en interés propio, de la persona física culpable.

Los administradores de sociedades, si por un lado les corresponde gobernar, regir y cuidar, pues a esto equivale administrar, por otro tendrán las obligaciones propias de los mandatarios, siendo las reglas del mandato, como dice la sentencia de 8 de enero de 1910 (Tribunal Supremo de España), precisas en este punto. El Art. 1718 del Código civil

.(Art. 1609 nuestro) determina la obligación del mandatario que ha aceptado el mandato a cumplirlo; el 1719 (Art. 1610 nuestro) establece que, a falta de instrucciones, debe arreglarse a lo que, según la naturaleza del negocio, haría un buen padre de familia.

El principio que define la obligación de reparar el daño causado por culpa o negligencia no quedaría cumplido si las responsabilidades que debe asumir el incapacitado o la persona jurídica ante tercero. no pudieran repercutirlas a aquellas personas que en el cumplimiento del deber de suplir tal incapacidad, han incurrido en dolo, culpa o negligencia, en cuanto a la vigilancia, custodia y representación que les estaba encomendada. También el Art. 1101 (Art. 1054 nuestro) del propio Código civil establece que "quedan sujetos a la indemnización de los daños y perjuicios causados los que en el cumplimiento de sus obligaciones incurrieran en dolo, negligencia o morosidad, y los que de cualquier modo contravinieran al tenor de aquellos", y completándolo, el 1104 (Art. 1057 nuestro) añade: "la culpa o negligencia del deudor consiste en la omisión de aquella diligencia que exija la naturaleza de la obligación y correspondan a las circunstancias de las personas, del tiempo y del lugar. Cuando la obligación no expresa la diligencia que ha de prestarse en su cumplimiento, se exigirá la que correspondería a un buen padre de familia."

Hasta aquí la glosa de Borrell Macia. Independientemente de su tangencia con cualquier forma de un contrato de trabajo o gestión, no es difícil concluir que el mayordomo de una central azucarera, encargado como lo está, de la custodia, vigilancia y disposición de los implementos agrícolas, realiza actos de administración que lo sitúan dentro de las líneas generales del mandato, y en cuanto a los daños causados a terceras personas por sus actos culposos, obliga a la compañía azucarera a nombre de la cual actúa a resarcir los daños, por el error que comete la compañía al eligir para tal puesto al

424

hombre responsable del acto culposo, pero a su vez, queda éste obligado a responder a aquélla de los actos culposos realizados en exceso de su mandato. Pero, como en este caso, cuando no se establece la responsabilidad directa que crea la *culpa in eligendo*, queda siempre la responsabilidad directa de la persona que ha actuado negligentemente ocasionando daños a una persona de acuerdo con el Art. 1802 del Código Civil nuestro: *Pérez Mercado* v. *Picó*, 63 D.P.R. 401 (Snyder) (1944), cita precisa a las págs. 404–405.

*La sentencia del Tribunal Superior de Puerto Rico, Sala de Ponce, de 8 de febrero de 1960 debe ser confirmada.*