MARÍA LUISA MARTÍNEZ GÓMEZ, demandante y recurrente, *v.* CHASE MANHATTAN BANK y OTROS, demandados y recurridos.

*Número:* R-78-390 *Resuelto:* 15 de marzo de 1979

516

*Israel Delgado Ramos,* abogado de la recurrente; *José L. Delgado Cadilla,* abogado de Professional Research & Community Services, Inc.; *José V. Gorbea Varona,* abogado del Chase Manhattan Bank.

EL JUEZ ASOCIADO SEÑOR DÍAZ CRUZ emitió la opinión del Tribunal.

## I

La regla de que el empleador no responde por los actos de su contratista independiente, confrontada con la creciente

tendencia favorable al demandante y la expansión de responsabilidad en casi todo campo de actividad, tiene hoy tantas excepciones(¹) que podría decirse con propiedad que la importancia primordial de la regla consiste en ser el preámbulo del catálogo de sus excepciones. Sobre su *raison d'être* de que la falta de control por el empleador en la ejecución de la obra por el contratista limita a éste la obligación de evitar el riesgo, ha prevalecido el argumento de que el empleador no se desliga de la empresa pues sigue siendo la persona principalmente beneficiada por la misma; "que él escoge al contratista, con libertad para insistir en uno de solvencia económica y exigirle indemnidad, y que el seguro necesario para distribuir el riesgo es propiamente un costo de su negocio." (²) En el desarrollo de la economía la figura del contratista independiente, que en su origen fue vocación del pequeño artesano, arribó como escudo tras el cual se ampara el empresario contra reclamaciones originadas en el riesgo natural de la empresa, recurso menos sofisticado que la fragmentación de personalidad en la ficción corporativa.

■ En Puerto Rico hemos avanzado notablemente, situados en la corriente de responsabilidad vicaria del principal empleador que se justifica en la aspiración de que ningún daño quede sin reparación. En *Barrientos* v. *Gob. de la Capital*, 97 D.P.R. 552, 564 (1969), nos apartamos del concepto

---

(¹)*Second Restatement of Torts*, secs. 410–429; *Pacific Fire Ins. Co.* v. *Kenny Boiler & Mfg. Co.*, 201 Minn. 500 (1937), 277 N.W. 226. Las numerosas excepciones ya ponen en entredicho la validez de la regla. Prosser, *Law of Torts*, Sec. 71, pág. 468, 4ta. ed. (1971).

(²)Prosser, *op. cit.*, pág. 468. Añade el autor que sobre esta base se ha predicho que al final la "regla general" será que el empleador responde por la negligencia de un contratista independiente, y que será relevado sólo en un limitado grupo de casos en que no esté en posición de seleccionar un contratista responsable, o cuando el riesgo de daño a otros por la empresa sea obviamente mínimo. Los tribunales ingleses han seguido esta dirección al punto que la posición del contratista independiente en Inglaterra se asemeja a la de un dependiente (*servant*).

restrictivo[3] de riesgo en la relación de principal y contratista independiente, y dijimos:

"Eliminado el concepto restrictivo de que el daño sea consecuencia necesaria de la ejecución de la obra, basta entonces para imponer responsabilidad al propietario que haya un riesgo reconocible, un daño previsible. No es necesario que el riesgo de causar daño sea grave o inevitable. Es suficiente que de las circunstancias específicas que rodean la ejecución de la obra pueda razonablemente reconocerse la existencia de un riesgo que requiera tomar precauciones. Las precauciones tampoco tienen que ser de naturaleza extraordinaria. En *Bonet* v. *Municipio de Barceloneta*, supra, puntualizamos estos elementos esenciales de la responsabilidad del propietario. Sin embargo, decidimos el caso basándonos en el concepto restrictivo del daño que aquí abandonamos. En realidad no estamos diciendo nada nuevo. El elemento de previsibilidad de riesgo de que aquí hablamos es el mismo elemento de previsibilidad que es consustancial a toda la doctrina de responsabilidad civil estatuida en el Art. 1802 del Código Civil."

## II

La demandada Professional Research & Community Services, Inc. (Research) es una agencia de cobros contratada por el demandado Chase Manhattan Bank (Chase) para gestiones relacionadas con la reposesión de vehículos de motor. Research a su vez subcontrató a Héctor L. Domínguez para que como contratista independiente se ocupara de gestionar las reposesiones, acordándose que sus servicios le serían pagados por unidad de trabajo y sólo si lograba efectuar

---

[3] Bajo dicha teoría, hoy abandonada, se resolvieron *Mariani* v. *Christy*, 73 D.P.R. 782 (1952) y *Bonet* v. *Municipio de Barceloneta*, 87 D.P.R. 81 (1963). *Pérez* v. *Hato Rey Bldg. Co.*, 100 D.P.R. 882 (1972), aparece como leve alto en la ruta de ampliación de responsabilidad en beneficio del preponderante interés del tercero perjudicado señalada en *Barrientos*, supra.

la reposesión. Domínguez por lo general iba acompañado de un alguacil, y una vez practicada la incautación llamaba una grúa que estaba bajo contrato con el Chase para que remolcara el automóvil hasta el sitio donde se iba a depositar. Por esta labor Research pagaba a Domínguez un por ciento de lo que ella cobraba al Chase por el servicio prestado. Domínguez no figuraba en la nómina de Research, utilizaba en sus gestiones su propio automóvil, mas no recibía rembolso de gastos, ni se le indicaba ruta a seguir.

La demandante y recurrente María Luisa Martínez Gómez había adquirido un automóvil mediante contrato de venta condicional financiado por el Chase, y su atraso en el pago de varios plazos mensuales dio lugar a la radicación de una demanda de reposesión en el Tribunal de Distrito, Sala de Humacao, habiéndose expedido orden para aseguramiento de efectividad de sentencia para ser diligenciada en o fuera de horas laborables. La Sra. Martínez Gómez se hallaba en su hogar en compañía de sus hijos menores de edad el 28 de octubre de 1977, cuando a eso de las 10:30 de la noche hasta dicha residencia se llegaron dos hombres dando golpes en las ventanas, identificándose como alguaciles del tribunal y requiriendo que le abriesen la puerta. Creyendo que se trataba de funcionarios del tribunal, ella abrió la puerta topándose con Héctor L. Domínguez y su acompañante Héctor Marcano quienes le informaron que venían a reposeer el automóvil porque estaba atrasada en los pagos. "A continuación", dice el juez sentenciador en sus determinaciones de hecho, "los dos individuos empezaron a hacer insinuaciones impropias y avances y proposiciones sexuales, las cuales la señora Martínez Gómez rechazó indignada. Al ocurrir este rechazo uno de ellos le propinó una bofetada. Ambos sujetos despedían aliento alcohólico y su conducta despreciable produjo humillación, aprehensión y vergüenza extrema en la señora Martínez Gómez, cuyos daños pecuniariamente tienen un valor no menor de $10,000.00. Por los hechos antes relatados los mencionados

fascinerosos fueron acusados de delitos públicos relacionados con estos hechos y ... fueron convictos."

El ilustrado juez desestimó la demanda al concluir que Domínguez era un contratisa independiente, encargado de un trabajo que no es inherentemente peligroso, fundando su decisión en *Mariani* v. *Christy*, supra. La demandante recurrió en revisión y a su solicitud de auto expedimos la siguiente orden:

"Las partes demandas y recurridas Chase Manhattan Bank y Professional Research & Community Services, Inc., tendrán un término hasta el 12 de marzo de 1979 para comparecer a mostrar causa por la que no deba revocarse la sentencia recurrida, y considerando la previsibilidad del daño inherente a la función de cobrador y de conducta proscrita por Ley Núm. 143 de 27 junio, 1968 (10 L.P.R.A. secs. 981 y ss.) regulatoria de las agencias de cobro, dictar otra estimando la demanda y condenando a las recurridas a indemnizar a la demandante."

Han comparecido las recurridas Chase y Research descansando primordialmente en el argumento sutil de que Domínguez no era un "cobrador" ni Professional Research es "agencia de cobros" porque su intervención se limitaba a embargar y reposeer vehículos de compradores morosos. Su teoría es incompatible con las determinaciones de hecho del juez sentenciador en cuyo párrafo 5° se declara probado que "Professional Research & Community Services, Inc. es una agencia de cobros que realiza gestiones en relación con reposesión de vehículos de motor para el Chase Manhattan Bank y otras compañías." Resulta tan evidente que la reposesión o embargo es el trámite que a la postre imparte concreción y eficacia al cobro de la cuenta, que aun las recurridas la llaman "tarea incidental" al pleito del Chase contra el deudor moroso.

### III

Un empleador responde por daños que debió anticipar al tiempo de contratar, y no puede eludir responsabili-

dad pasándola al contratista. La excepción a la regla de indemnidad del principal por actos del contratista independiente, se da en el trabajo arriesgado en ausencia de precauciones especiales. (⁴) La persona que emplea un contratista independiente para hacer trabajo que el empleador debe reconocer como propenso a crear durante su desarrollo un riesgo peculiar de daño a tercero a menos que se tomen precauciones especiales, está sujeta a responsabilidad por el daño causado por razón de no haberse cuidado el contratista de tomar tales precauciones, aun cuando el empleador las hubiese ordenado en el contrato o por cualquier otro medio.

 Las personas que directa o indirectamente contratan a un contratista independiente serán responsables solidariamente del daño que por su negligencia éste causare en la ejecución del trabajo, si dicho daño fuera un riesgo previsible para el contratante. El campo de la responsabilidad civil en la vida contemporánea se ha extendido con el advenimiento de actividades que aun cuando entrañan previsible riesgo de daño son permitidas en atención a su preponderante interés social. Las antiguas fórmulas jurídicas, como la teoría de que no hay responsabilidad sin culpa, sufren la erosión de excepciones orientadas a la necesidad de indemnizar el daño con independencia de la culpa siempre que aparezca de una actividad arriesgada que se traduce en apreciable beneficio para la empresa.

 El empleador del contratista no responde por la negligencia corriente de éste que resulte en daño para tercera persona, ni por su inobservancia de precauciones de rutina que un contratista cuidadoso debe usualmente tomar. La responsabilidad del empleador gira en torno a "riesgos especiales, peculiares al trabajo que deba realizarse y que surgen de su naturaleza o del sitio donde deba realizarse, contra

---

(⁴)*Restatement of the Law 2d, Torts 2d,* pág. 395.

los cuales un hombre razonable reconocería la necesidad de tomar precauciones especiales . . . . 'Peculiar' no quiere decir que sea un riesgo anormal en ese tipo de labor o que ha de ser un riesgo anormalmente grande. Se refiere sólo a un peligro especial y conocible que se da en esa clase de trabajo." (5)

 Tanto para el Banco Chase como para su contratista Research, al momento de contratar, era enteramente previsible que en el curso de las diligencias de cobro y reposesión de vehículos encomendados a Domínguez podía surgir el riesgo de daño a *tercero* peculiar de este trabajo, a saber, la violencia y el abuso. Dicho riesgo era tan patente y notorio, que en protección del pueblo la Asamblea Legislativa desde el 27 de junio de 1968 había aprobado la Ley Núm. 143 titulada "Ley de Agencias de Cobros" (10 L.P.R.A. sec. 981 *et seq.*) reglamentando dicho negocio, sujetándolo a licencia, requiriendo en su Art. 6, antes de expedirla, investigación por el Secretario de Hacienda sobre la responsabilidad financiera, integridad, experiencia, reputación, carácter y aptitud general del solicitante y de todo el personal empleado por o asociado con el solicitante; exigiendo fianza a éste por la cantidad de $5,000 para responder de cualquier pérdida o daño que se ocasione a cualquier persona por razón de incumplimiento con la Ley (Art. 7); excluyendo del derecho a licencia a personas convictas de delito que implique depravación moral (Art. 8); y declarando prácticas prohibidas y delito menos grave operar so color de autoridad pública y "usar o amenazar con usar violencia física para cobrar una cuenta." (Art. 17.) La mala práctica, la conducta ofensiva y violenta y el abuso se habían generalizado en nuestro medio al punto que la Legislatura hubo de actuar para reprimir la agresividad y los atropellos de los cobradores. (6) La previsibilidad del

---

(5) *Restatement, op. cit.,* Sec. 413, pág. 385.

(6) El Informe de la Comisión de Industria y Comercio del Senado que precedió a la aprobación de dicha Ley Núm. 143 al anunciar los propósitos de la medida, expresa:

daño en este caso inferido a la demandante por el cobrador está reforzada por el precepto de que todo el mundo conoce la ley. El Banco Chase y su contratista Research, conocedores de la Ley que atañe a su actividad comercial y de la situación que dicho estatuto se propuso remediar, debieron prever el riesgo concretado en daño por la actuación de Domínguez como "peligro especial y conocible que se da en esa clase de trabajo". *Restatement*, supra. La violencia y el abuso, aun cuando no constituían riesgo anormalmente grande del tipo que conllevan las operaciones "inherentemente peligrosas", habían advenido, en las circunstancias de personas, tiempo y lugar, como riesgo especial, peculiar al trabajo de cobrador contra el cual los demandados recurridos debieron tomar precauciones especiales, en orden preferente entre ellas obtener un seguro que resarciera a las víctimas de los desmanes de los cobradores, en vez de buscar inmunidad detrás de la insolvencia del contratista independiente. Su descuido está sancionado por el Art. 1057 del Código Civil (31 L.P.R.A. sec. 3021) en su prevención: "La culpa o negligencia del deudor consiste en la omisión de aquella diligencia que exija la naturaleza de la obligación y corresponda a las circunstancias de las personas, del tiempo y del lugar. Cuando la obligación no exprese la diligencia que ha de prestarse en su cumplimiento, se exigirá la que correspondería a un buen padre de familia."

La responsabilidad de los demandados fluye, además, del hecho central de ser ambos beneficiarios en su respectivas empresas, de la labor que la noche de autos realizaba Domín-

---

"Se nos informa que durante el tiempo que estas agencias de cobro han operado sin reglamentar se ha incurrido en ciertas prácticas que podríamos tildar de irresponsables e inescrupulosas. Se hace necesario por lo tanto esta reglamentación para impedir la entrada de estas personas inescrupulosas en este campo. Hay que proteger al deudor de malas prácticas en el proceso de cobro por parte de las agencias pero sin llegar al punto de que esta protección entorpezca indebidamente la misión de la agencia, fomente el incremento en el número de deudores morosos y aumente el mal uso del crédito. Se hace necesario reglamentar las relaciones entre la agencia y el acreedor sin crear ventajas arbitrarias de una parte contra otra."

guez. Es contrario al bienestar general y al interés público en la seguridad y salud de los miembros de la sociedad, la existencia en su seno de actividades dañosas, promovidas por poderosas empresas con fines de lucro a través de agentes irresponsables contra cuya insolvencia se frustra todo intento de reparación del daño. "[P]uesto que las personas jurídicas se valen de la actividad de personas físicas, y reciben las ventajas que tal actuación les procura, han de cargar también con las desventajas que, como contrapartida de aquel beneficio, puedan acarrearles la actuación dolosa o culposa de aquéllos . . . . [C]uando no se establece la responsabilidad directa que crea la culpa *in eligendo,* queda siempre la responsabilidad directa de la persona que ha actuado negligentemente ocasionando daños a una persona, de acuerdo con el Art. 1802 del Código Civil nuestro." *Ortiz* v. *Sucn. J. Serrallés,* 89 D.P.R. 419, 422 y 424 (1963).

La aplicación del criterio de beneficio económico como fuente de responsabilidad civil(7) se ha seguido por este Tribunal en *Weber* v. *Mejías,* 85 D.P.R. 76, 79 (1962), en *Martínez* v. *Comunidad M. Fajardo,* 90 D.P.R. 461, 467 (1964); y en *Lugo Montalvo* v. *González Mañón,* 104 D.P.R. 372, 379 (1975), donde impusimos responsabilidad civil a la sociedad de gananciales por la actuación personal de mala práctica de un médico bajo el supuesto de que su práctica profesional redundaba en provecho e incremento del acervo ganancial. El principio tiene una larga historia en nuestra jurisprudencia desde *Santana* v. *Ramírez,* 4 D.P.R. 208 (1903), interpretando el Art. 1793 del Código Civil en su disposición de que "aunque no hubiese ratificado expresa-

---

(7)Debe sentir el embargo de las cosas aquél que ha el pro de ellas. Por eso, cuando el dueño se aprovecha de las ventajas que proporcione la gestión ajena de sus negocios, se constituye en las mismas obligaciones que tendría si fuera mandante, aunque no haya ratificado expresamente la gestión, porque en otro caso vendría a lucrarse injustamente de esas ventajas o de los beneficios producidos por los actos del gestor. Manresa, Código Civil Español, Tomo 12, págs. 800–802, 6ta. ed. (1973).

mente la gestión ajena el dueño de bienes o negocios que aprovecha las ventajas de la misma será responsable de las obligaciones contraídas en su interés." Cuando no exista, como en el caso de autos, ratificación expresa de la gestión por parte del dueño del negocio, el principal sólo quedará obligado si aprovecha las ventajas de la gestión, teniendo en tal caso las obligaciones propias del mandante con todos sus efectos y consecuencias jurídicas, o sea, la de los Arts. 1618 y 1621 del Código Civil, puesto que el apropiarse efectivamente de los resultados de la gestión y su aprovechamiento por parte del dueño es lo que constituye presunción de ratificación de aquélla. "El aprovechamiento de las ventajas por parte del *dominus* entraña *ope legis* unas consecuencias contra las que no cabe prueba alguna en contrario." Bonet Ramón, *Código Civil Comentado*, pág. 1490, 2da. ed. (1964).

▮ Por tratarse de una acción revestida de interés público, la reclamación de la demandante no ha de estar maniatada por la regla de nexo contractual directo entre Research y Domínguez. La cadena de responsabilidad se extiende en retrospección hasta alcanzar el Banco Chase que dio el impulso inicial a la actividad generadora del daño sufrido por la recurrente. En nuestra jurisdicción, en consideración a razones de orden público, hemos rebasado la estrechez de la doctrina del nexo contractual directo reconociendo la trasmisibilidad de la acción decenal correspondiente al comprador original de una vivienda contra su contratista-vendedor (*Pereira* v. *I.B.E.C.*, 95 D.P.R. 28, 65–66 (1967)); en la imposición de garantía expresa (*Ferrer* v. *General Motors Corp.*, 100 D.P.R. 246 (1971)); y aun en la implícita (*Mendoza* v. *Cervecería Corona, Inc.*, 97 D.P.R. 499 (1969)). Todos los antecesores en la cadena de contratación del causante directo del daño, que comparten la previsibilidad del suceso torticero responden a la perjudicada.

Al así decidir estamos redistribuyendo la responsabilidad por el agravio social que representa la conducta abusiva de

algunas agencias de cobro, enfilándola hacia los promotores y principales beneficiarios de la actividad comercial que están en mejor condición que el cobrador para resarcir a la víctima.

*Se expedirá el auto y se dictará sentencia estimando la demanda y condenando a Chase y a Research a indemnizar a la demandante recurrente en la suma de $10,000.00 más $1,000.00 para honorarios de abogado. Revocada.*

El Juez Presidente Señor Trías Monge y el Juez Asociado Señor Martín concurren en el resultado.