ERNESTO LÓPEZ y esposa, por sí y en representación de la menor Z.L.O., demandantes y recurridos, *v.* JESÚS CRUZ RUIZ y OTROS, demandados, GOBIERNO MUNICIPAL DE CATAÑO y OTROS, codemandados y peticionarios.

*Número:* CE-86-744        *Resuelto:* 5 de octubre de 1992

696

*Roberto De Jesús Cintrón*, abogado de los codemandados y peticionarios; *José Luis Cumbas Torres*, abogado de los demandantes y recurridos.

EL JUEZ ASOCIADO SEÑOR FUSTER BERLINGERI emitió la opinión del Tribunal.

Tenemos ante nos la ocasión para precisar y aclarar algunos de nuestros pronunciamientos normativos en *Martínez v. Chase Manhattan Bank*, 108 D.P.R. 515 (1979), sobre la responsabilidad del que pacta con un contratista independiente.

I

El 13 de septiembre de 1979, el Municipio de Cataño (en adelante el Municipio), representado por su alcalde José

Álvarez Brunet, contrató los servicios de la firma Bayamón Asphalt Paving, representada por su presidente Jesús Cruz Marrero, para que efectuara un trabajo de limpieza en un solar yermo propiedad de ese municipio.

Mediante dicho contrato el señor Cruz Marrero se obligó a realizar el trabajo de limpieza a cambio del pago de $5,000. Se acordó que se haría primero un pago parcial según factura de trabajo realizado y un pago final al terminar la limpieza del solar. El Municipio no exigió un seguro de responsabilidad pública al contratista; sólo se le exigió la póliza del Fondo del Seguro del Estado.

La firma contratada, a su vez, subcontrató los servicios del codemandado Jesús Cruz Ruiz (padre de Cruz Marrero), incluyendo como parte de esos servicios el uso de un camión de Cruz Ruiz.

En horas de la tarde del 18 de octubre de 1979, mientras se realizaba la limpieza del mencionado solar, el codemandado José A. González Mercado conducía el camión vacío de regreso del vertedero para dirigirse al solar nuevamente. Al pasar frente al Parque Perucho Cepeda, localizado cerca del solar en cuestión, el camión impactó a la menor demandante Zoraida López Ortega, quien montaba en bicicleta y había salido momentos antes de una escuela elemental ubicada al lado del parque.

El 8 de octubre de 1980 los padres de la menor Zoraida López Ortega, Ernesto López y su esposa, Olga Ortega, por sí y en representación de la menor, presentaron la demanda sobre daños y perjuicios que dio lugar al inicio de este pleito. En la demanda se incluyó como demandados a José A. González Mercado, Jesús Cruz Ruiz y a las compañías aseguradoras "Equis" y "Ye". En la misma se alegó que José A. González Mercado era el conductor del vehículo que ocasionó los daños a la menor Zoraida López Ortega y que dicho vehículo estaba registrado en el Departamento de Obras Públicas a nombre de Jesús Cruz Ruiz.

El 21 de diciembre de 1981 la parte demandante pre-

sentó una demanda enmendada en la cual se añadió como codemandados a Jesús Cruz Marrero y a su esposa. En la misma se alegó que el codemandado Jesús Cruz Marrero fue la persona que alquiló el camión que ocasionó los daños a la menor Zoraida López Ortega y que éste era responsable de los mismos. Se alegó que el conocimiento de este hecho, motivo de la enmienda a la demanda, surgió de una contestación al interrogatorio que diera el codemandado Jesús Cruz Ruiz el 6 de julio de 1981. Ambos codemandados, Jesús Cruz Marrero y su esposa Nereida Erazo, fueron emplazados individualmente. El codemandado Jesús Cruz Marrero en su contestación a la demanda levantó como defensa afirmativa que él arrendó un camión perteneciente al codemandado Jesús Cruz Ruiz, quien actuó como contratista independiente, por lo que él no era responsable por los daños que éste hubiese ocasionado.

El 19 de agosto de 1982 la parte demandante solicitó y obtuvo permiso del tribunal de instancia para enmendar nuevamente la demanda, y el 23 de agosto siguiente presentó una segunda demanda enmendada. En la misma se incluyó como codemandados al Municipio de Cataño y a "Fulano" y a "Sutano" como aseguradores y/o como otros demandados desconocidos en el pleito. Se alegó que el Municipio era el dueño de la obra en la cual estaba trabajando el contratista codemandado Jesús Cruz Marrero y que el Municipio debió exigirle a éste una póliza de responsabilidad pública debido a que cualquier daño causado por el contratista sería atribuíble al dueño de la obra por ser el promovente de la misma. La parte demandante alegó, además, que fue el 21 de julio de 1982, a través de la contestación de los demandados originales a su interrogatorio, cuando se enteró, por primera vez, que el camión causante de los daños se estaba usando en una obra del Municipio.

El 22 de septiembre de 1982 la parte demandante notificó al Municipio sobre la ocurrencia de los hechos que dieron lugar a este litigio y su intención de tomar acción legal

en su contra. El Municipio contestó la segunda demanda enmendada y levantó como defensas afirmativas que la demanda no aducía hechos constitutivos de una causa de acción contra el Municipio, que la reclamación en su contra estaba prescrita y que no se había dado cumplimiento al requisito de notificación dentro del término dispuesto en ley.

El 14 de mayo de 1985 el tribunal de instancia emitió una sentencia parcial, luego de haberse celebrado una vista limitada al aspecto de negligencia, en la cual determinó que la causa del accidente en cuestión se debió a la negligencia del conductor del camión José A. González Mercado, y que dicho camión era propiedad del codemandado Jesús Cruz Ruiz. El tribunal también le concedió a las partes treinta (30) días para ponerse de acuerdo en cuanto a los aspectos de daños y responsabilidad que quedaban pendientes. Al día siguiente, el Municipio solicitó que se desestimara la demanda en cuanto al Municipio, alegando que no había relación causal suficiente que conectara al Municipio con los daños sufridos por la menor. La moción fue denegada.

Por no llegar las partes a un acuerdo, los demandantes solicitaron una vista para establecer responsabilidad. El Municipio se opuso a dicha vista alegando otra vez que no había relación causal que ligase al Municipio con el accidente. La vista se celebró el 27 de mayo de 1986. En la misma, las partes acordaron someter escritos adicionales en apoyo de sus posiciones sobre responsabilidad, los informes periciales y las declaraciones juradas de los demandantes para establecer los daños. Se acordó que, de no haber objeciones, se entendería sometido el caso a base del expediente.

Con fecha de 27 de junio de 1986 la parte demandante presentó su informe al tribunal sobre responsabilidad, prueba pericial y evaluación de angustias mentales y daños. Las partes codemandadas no presentaron objeción

al mismo y el caso se entendió sometido a base del expediente.

El 14 de agosto de 1986 el tribunal de instancia emitió otra sentencia en la que determinó que el Municipio era responsable por los daños causados a los demandantes. El tribunal entendió que los demandantes habían descubierto que el Municipio era el dueño de la obra después de haber presentado su demanda inicial, como resultado del correspondiente descubrimiento de prueba realizado por la parte demandante en relación con los demandados originales, y que sólo quedaba por resolver la controversia planteada por el Municipio sobre la inexistencia de relación causal. El foro de instancia no adjudicó los derechos y las obligaciones de las otras partes codemandadas en el pleito e impuso responsabilidad solamente al Municipio por los daños y perjuicios causados a los demandantes. El tribunal estimó los daños físicos sufridos por la menor en $150,000, los daños especiales en $31,200, su pérdida de ingresos en $25,000, sus angustias mentales en $50,000, y las angustias mentales de su padre y su madre en $25,000 para cada uno. Impuso, además, $5,000 por concepto de honorarios de abogados y $214,728 en intereses computados al doce por ciento (12%) desde la presentación de la demanda cinco punto setenta y cinco (5.75) años atrás. El monto total de la compensación concedida fue de $525,928.

El 11 de septiembre de 1986 el Municipio presentó una moción de reconsideración al amparo de la Regla 47 de Procedimiento Civil, 32 L.P.R.A. Ap. III. Dicha solicitud de reconsideración fue rechazada de plano por el tribunal el 18 de septiembre de 1986.

El 7 de noviembre de 1986 el abogado del Municipio acudió ante nos mediante petición de *certiorari* y planteó las cuestiones de derecho siguientes:

I. Este Honorable Tribunal tiene jurisdicción para revisar la "Opinión y Sentencia" recurrida mediante el presente recurso

de certiorari por ser ésta una sentencia interlocutoria contra la cual no ha comenzado a correr el término jurisdiccional de 30 días establecido en la Regla 53 de las de Procedimiento Civil para acudir en revisión.

II. Erró el tribunal *a quo* al emitir como sentencia final una "Opinión y Sentencia" en la que no se adjudican las responsabilidades y obligaciones de todas las partes co-demandadas, y en la que tampoco se cumple con el requisito de certificación de finalidad establecido en la Regla 43.5 de las de Procedimiento Civil para que proceda dictar sentencia final contra una o más, pero menos del total de las partes en un pleito en que figuren partes múltiples.

III. Erró el tribunal *a quo* al imponer responsablidad al peticionario, Municipio de Cataño, por los daños ocasionados por negligencia del conductor de un camión subcontratado por un contratista independiente para realizar la labor contratada por el Municipio. El tribunal erró al imponer responsabilidad al Municipio en ausencia de algún riesgo previsible que hubiese requerido que el Municipio hubiese tomado precauciones especiales.

IV. Erró el tribunal *a quo* al no determinar que las reclamaciones de los padres de la menor demandante contra el Municipio de Cataño estaban prescritas y que todas las reclamaciones eran improcedentes por no haberse cumplido con el requisito de notificación al Municipio dentro del término dispuesto por ley.

V. Erró el tribunal *a quo* al imponer al peticionario, Municipio de Cataño, el pago de una suma por concepto de honorarios de abogado más el pago de intereses al 12 por ciento sobre la cuantía de la compensación concedida, a computarse desde la fecha de la radicación de la demanda hasta la fecha en que se dictó sentencia. Petición de *certiorari*, pág. 6.

A los fines de evaluar integralmente el recurso presentado, y en atención a la circunstancia de que la sentencia dictada no adjudicaba la responsabilidad de todas las partes, el 26 de noviembre de 1986 ordenamos al Tribunal Superior que procediera a adjudicar la responsabilidad de las partes restantes en el caso y nos remitiera copia de la sentencia una vez realizara dicha adjudicación.

El Tribunal Superior de Bayamón dictó lo que llamó "Sentencia Enmendada" el 12 de diciembre de 1986. Mediante la misma el tribunal enmendó la sentencia anterior

de 14 de agosto de 1986 a los efectos de imputarle responsabilidad solidaria a todos los codemandados.(¹)

Vista la petición de *certiorari* y la sentencia final del presente caso, concedimos término a la parte recurrida para mostrar causa por la cual no se debía expedir el auto y revocar parcialmente la sentencia recurrida únicamente a los efectos de eximir al Municipio de responsabilidad.

En contestación a nuestra orden para mostrar causa la parte demandante solicitó que no se relevara de responsabilidad al Municipio y alegó que era fácil prever que podían causarse daños al disponer de desperdicios sólidos mediante el uso de un camión, máxime cuando para llegar al vertedero municipal el camión tenía que pasar cerca de un parque de pelota y una escuela elemental, áreas donde podía haber niños jugando. Por ello, según la parte demandante, el Municipio debió haber exigido al contratista una póliza de seguro de responsabilidad pública para proteger a terceros contra daños que pudiesen surgir en el transcurso de la obra.

La posición del Municipio es que no responde por los daños y perjuicios que se reclaman en su contra porque los trabajos de limpieza del solar fueron realizados por Jesús Cruz Marrero, un contratista independiente; el conductor del camión que causó los daños a la menor demandante no era su empleado, sino empleado de dicho contratista, y no están presentes en este caso las circunstancias que permitirían imponerle responsabilidad al dueño de la obra por

---

(¹) El primer párrafo de la página veintisiete (27) de la sentencia original leía:

"Analizando integralmente las normas descritas, integradas éstas a las determinaciones de hechos antes efectuadas, se hace clara y contundente la imposición de responsabilidad al Municipio de Cataño." Sentencia y Opinión, pág. 27.

La enmienda realizada por el Tribunal Superior fue a los efectos de que dicho párrafo leyera de la manera siguiente:

"Analizando integralmente las normas descritas, integradas éstas a las determinaciones de hechos antes efectuadas se impone responsabilidad solidaria a los codemandados Jesús Cruz Ruiz, José A. González Mercado, Jesús Cruz Marrero y la sociedad legal de gananciales compuesta por Jesús Cruz Marrero y Nereida Erazo y Gobierno Municipal de Cataño."

los daños causados por el empleado de un contratista independiente en la ejecución de la obra contratada.

## II

■ Coincidimos con la determinación del tribunal de instancia de que el codemandado Jesús Cruz Marrero era un contratista independiente. Al así hacerlo hemos examinado las circunstancias del caso en conjunto, dándole especial consideración a la cuestión de quién retenía el control de la acción de la cual resultó el daño. De los hechos no controvertidos surge que el Municipio contrató a Jesús Cruz Marrero y a su firma, Bayamón Asphalt Paving, para que realizaran un trabajo de limpieza y que el contratista quedó sometido a la voluntad y al control del Municipio solamente en cuanto al resultado final de la labor contratada. Fue el propio contratista quien por su cuenta subcontrató los servicios del camión y de su conductor, por lo que era él quien tenía el control y la autoridad sobre éstos. No hubo ninguna prueba que indicase que el Municipio ejerció control alguno sobre la manera, los medios y las personas que llevaron a cabo el trabajo.(²)

■ Sin embargo, como ya hemos señalado anteriormente, la condición de contratista independiente no releva por sí sola al principal que emplea a dicho contratista de los daños que éste haya causado. En *Martínez v. Chase Manhattan Bank*, supra, establecimos la doctrina vigente en nuestra jurisdicción sobre la responsabilidad del dueño

---

(²) El único dato relacionado con el aspecto del control que tuvo ante su consideración el tribunal de instancia surgió de la deposición tomada al Director de Finanzas del Municipio. Este declaró que el Municipio de Cataño (en adelante Municipio) acostumbraba a tener una persona para supervisar los proyectos contratados y velar que el trabajo se hiciera según el Municipio hubiera estipulado. En ausencia de otros hechos adicionales que demuestren que el dueño de la obra tuviera control sobre los medios y la manera que la misma se llevaba a cabo, "[l]a retención por el dueño del derecho de inspeccionar y supervisar es compatible con el *status* de contratista independiente". *Mariani v. Christy*, 73 D.P.R. 782, 798 (1952).

de una obra por los daños causados a terceros por un contratista independiente. La norma de responsabilidad adoptada fue la siguiente:

> Un empleador responde, por daños que debió anticipar al tiempo de contratar, y no puede eludir responsabilidad pasándola al contratista. ... La persona que emplea un contratista independiente para hacer trabajo que el empleador debe reconocer como propenso a crear durante su desarrollo un riesgo peculiar de daño a tercero a menos que se tomen precauciones especiales, está sujeta a responsabilidad por el daño causado por razón de no haberse cuidado el contratista de tomar tales precauciones, aun cuando el empleador las hubiese ordenado en el contrato o por cualquier otro medio. (Escolio omitido.) *Martínez v. Chase Manhattan Bank*, supra, págs. 521–522.

Con relación a la clase de riesgos peculiares previsibles por los que responde el empleador en ausencia de precauciones especiales señalamos que:

> La responsabilidad del empleador gira en torno a "riesgos especiales, peculiares al trabajo que deba realizarse y que surgen de su naturaleza o del sitio donde deba realizarse, contra los cuales un hombre razonable reconocería la necesidad de tomar precauciones especiales.... 'Peculiar' no quiere decir que sea un riesgo anormal en ese tipo de labor o que ha de ser un riesgo anormalmente grande. Se refiere sólo a un peligro especial y conocible que se da en esa clase de trabajo." *Martínez v. Chase Manhattan Bank*, supra, págs. 522–523.

En *Martínez v. Chase Manhattan Bank*, supra, abandonamos la norma restrictiva de responsabilidad utilizada en casos anteriores tales como *Mariani v. Christy*, 73 D.P.R. 782 (1952), y *Bonet v. Municipio de Barceloneta*, 87 D.P.R. 81 (1963). Bajo la antigua norma, el principal sólo respondía por los actos de un contratista independiente en aquellos casos en que el daño causado fuese resultado directo y necesario del trabajo realizado, por tratarse de una actividad que por su propia naturaleza necesariamente tenía que causar o producir peligros o daños.

■ Bajo la doctrina adoptada en *Martínez v. Chase Manhattan Bank*, supra, pág. 522:

> Las personas que directa o indirectamente contratan a un contratista independiente serán responsables solidariamente del daño que por su negligencia éste causare en la ejecución del trabajo, si dicho daño fuera un riesgo previsible para el contratante.

■ Esta norma no impone responsabilidad vicaria al empleador por los daños que ocasione el contratista independiente o un empleado de éste. Sólo le impone responsabilidad en aquellos casos en que por su propia culpa o negligencia, por falta de la debida previsión en cuanto a la necesidad de tomar precauciones especiales, se causen daños a terceros.[3] La culpa o negligencia que da lugar a la responsabilidad del empleador emana de la omisión de tomar las precauciones que se requerirían en vista de los riesgos particulares de una obra.

■ Para que proceda en derecho imponer responsabilidad al empleador de una obra por la culpa o negligencia de un contratista independiente es condición indispensable que los riesgos o los daños antes mencionados hayan sido previsibles al empleador pues de otra manera los riesgos o daños no se hubieran podido evitar.[4]

---

[3] Esta norma es consistente con el principio de que "la obligación de reparar daños en nuestro ordenamiento jurídico generalmente dimana de un hecho propio" y que sólo "[e]xcepcionalmente, se impone responsabilidad por hechos ajenos cuando existe un nexo jurídico previo entre el causante del daño y el que viene obligado a repararlo". *Vélez Colón v. Iglesia Católica*, 105 D.P.R. 123, 127 (1976). Véanse, además: Arts. 1802 y 1803 del Código Civil, 31 L.P.R.A. secs. 5141 y 5142.

Por otro lado, el Tribunal Supremo de España sobre este aspecto ha expresado que:

"Es necesario que del hecho culposo o negligente sea responsable, por actos directos o mediatos, el actor a quien se imputa. Ss. de 14 de junio de 1956, 3 de junio de 1957 y 5 de abril de 1960."

[4] Como bien señala Jaime Santos Briz, "[l]a previsibilidad se considera el antecedente lógico y psicológico de la evitabilidad de un resultado contrario a derecho y no querido". J. Santos Briz, *La Repsonsabilidad Civil*, Madrid, Ed. Montecorvo, 1991, T. I, pág. 44. Esta idea ha sido recogida por la jurisprudencia española en la

Nuestro derecho positivo, claramente, declara que nadie responderá de aquellos sucesos que no hubieran podido preverse o que previstos, fueran inevitables. Art. 1058 Código Civil, 31 L.P.R.A. sec. 3022. Ya desde *Barrientos v. Gob. de la Capital*, 97 D.P.R. 552, 564 (1969), puntualizamos el requisito de previsibilidad en este tipo de caso y dijimos:

> Eliminado el concepto restrictivo de que el daño sea consecuencia de la ejecución de la obra, basta entonces para imponer responsabilidad al propietario que haya un riesgo reconocible, un daño previsible. No es necesario que el riesgo de causar daño sea grave o inevitable. Es suficiente que de las circunstancias específicas que rodean la ejecución de la obra pueda razonablemente reconocerse la existencia de un riesgo que requiera tomar precauciones. Las precauciones tampoco tienen que ser de naturaleza extraordinaria.

Aclaramos, además, que:

> El elemento de previsibilidad de riesgo de que aquí hablamos es el mismo elemento de previsibilidad que es consustancial a toda la doctrina de responsabilidad civil estatuida en el Art. 1802 del Código Civil.

Anteriormente, en *Salvá Matos v. A. Díaz Const. Corp.*, 95 D.P.R. 902, 906–907 (1968), adoptamos el significado usual y corriente de la palabra "prever". En dicha ocasión señalamos:

> En su sentido usual y corriente "prever" es ver con anticipación, conjeturar lo que ha de suceder. Es precaver, prevenir evitar un daño o peligro. Previsibilidad, según Cabanellas, es elemento característico de la culpa, consistente en la posibilidad de prever los resultados dañosos de la acción no previstos de modo efectivo en el caso de que se trate. Requiere el precaver, adoptar las medidas de seguridad para evitar en lo posible los males reales. En sentido usual y corriente previsión, el acto de prever,

---

Sentencia del Tribunal Supremo de España de 9 de abril de 1963, al declarar que tanto si la culpa o negligencia es consciente, como si es inconsciente, el resultado ha tenido que ser previsto o ha de ser previsto; esta previsibilidad del resultado es el presupuesto lógico y psicológico de la evitabilidad del mismo.

es la acción de disponer lo conveniente para atender a contingencias o necesidades previsibles, o sea, atender aquello susceptible de ser previsto. (Escolios omitidos.)

Al analizar los hechos del caso de autos, no puede razonablemente decirse que los daños ocurridos a la menor demandante fueran previsibles por parte del Municipio al momento de contratar la obra. No surge prueba del expediente de que la labor objeto del contrato crease *riesgos especiales o peculiares* capaces de causar daños a terceros. De ordinario la limpieza de un solar yermo no representa ningún peligro o riesgo contra el cual debe tomarse precauciones especiales. El hecho de haber utilizado un camión en la limpieza tampoco añade a la labor riesgos o peligros especiales o peculiares. Por otro lado, en el caso de autos no existe prueba de que los daños causados a la menor demandante se debieran a riesgos o peligros de la obra contra los cuales el Municipio no tomara precauciones adecuadas.

▉ Surge claramente de los hechos del caso que los daños causados a la menor demandante se debieron directamente a la negligencia del conductor del camión, el codemandado José A. González Mercado, al no tomar las debidas precauciones al conducir un vehículo de motor por un área cercana a una escuela elemental y a un parque. El daño causado por el empleado del contratista fue debido a su inobservancia de precauciones de rutina, que toda persona debe usualmente tomar al conducir un vehículo de motor. Este es el tipo de negligencia por la cual no responde el empleador del contratista independiente. Como bien señaláramos en *Martínez v. Chase Manhattan Bank*, supra, pág. 522, "[e]*l empleador del contratista no responde por la negligencia corriente de éste que resulte en daños para tercera persona, ni por su inobservancia de precauciones de rutina que un contratista cuidadoso debe usualmente tomar*". (Énfasis suplido.)

En ausencia de riesgos o peligros peculiares previsibles

al Municipio, no procedía la imposición de responsabilidad por daños hecha por el tribunal de instancia. El tribunal de instancia fundamentó su determinación de responsabilidad en tres (3) hechos básicos: primero, el hecho de que el Municipio no solicitara al contratista una póliza de responsabilidad pública para cubrir daños a terceros; segundo, el hecho de haber permitido indirectamente la subcontratación de la obra al no prohibirla expresamente en el contrato, y tercero, el hecho de haber supervisado la obra en cuestión.

Ninguno de estos hechos constituyen prueba de negligencia o culpa para imponerle al Municipio responsabilidad civil por los daños ocurridos a la menor demandante. Examinemos cada uno de ellos por separado.

Primeramente, aunque en efecto el Municipio exigía en ocasiones una póliza de responsabilidad pública a los contratistas, en este caso no lo hizo precisamente porque no eran previsibles riesgos especiales de daños a terceros.(5) El único posible riesgo que era previsible al contratar la obra era el riesgo de que ocurriesen daños a los empleados del contratista. En vista de dicha posibilidad, el Municipio requirió al contratista una póliza del Fondo del Seguro del Estado para cubrir daños a los empleados.

En segundo lugar, la subcontratación de empleados en los contratos de arrendamiento de obras o de servicios es una práctica ordinaria de los contratistas. El permitir o no la subcontratación de una obra depende generalmente del juicio de los contratistas. Salvo que se haya pactado lo con-

---

(5) En cuanto a este punto debemos aclarar que lo hemos discutido por haberlo considerado el tribunal de instancia como fundamento para imponerle responsabilidad al Municipio. De ninguna manera queremos con esta discusión significar que el hecho de no exigir una póliza de responsabilidad pública bajo determinadas circunstancias pueda necesariamente constituir negligencia a los fines de imponer responsabilidad por causar un daño. Evidentemente, ni la exigencia de una póliza de seguro de responsabilidad pública ni la tenencia de ésta contribuyen a evitar la ocurrencia de un daño, por lo que una póliza de esta naturaleza no constituye una precaución que pueda evitar daños ni riesgos de daños a terceros.

trario, no debe impedirse la subcontratación, ya que imponer esta limitación a los contratistas podría resultar oneroso e irrazonable y podría encarecer el trabajo de éstos.

La subcontratación, como regla general, no tiene nada que ver con la determinación de responsabilidad por daños, a menos que fuera previsible que la utilización de los servicios de un contratista independiente fuera a crear riesgos especiales, o a menos que en la obra existieran riesgos peculiares previsibles. En tales casos el Municipio sería responsable por los daños que pudieron haberse previsto resultantes de la subcontratación. Pero, como ya hemos indicado, tal no era el caso aquí donde la subcontratación fue para realizar labores rutinarias.

En tercer lugar, la supervisión ejercida por el Municipio no tiene relación alguna con la responsabilidad que pudiera surgir por los daños ocurridos. Dicha supervisión estaba dirigida a asegurarse que la obra contratada se realizara conforme a lo pactado. Así, el Municipio cumplía con su deber de velar por el manejo adecuado de los fondos públicos. Y la supervisión en este caso no se extendía a asuntos fuera de su control, tales como la conducción del camión de marras.

Examinados, pues, los hechos en que se fundó la determinación del tribunal de instancia, no encontramos bases suficientes para responsabilizar por los daños al Municipio.

## IV

Finalmente, cabe señalar que no aplica en este caso la teoría de beneficio económico esbozada en el citado caso *Martínez v. Chase Manhattan Bank*.[6] Esta teoría de

---

[6] En *Martínez v. Chase Manhattan Bank*, 108 D.P.R. 515, 522 (1979), se dijo lo siguiente:

beneficio económico presupone, como bien señala el caso de *Martínez v. Chase Manhattan Bank*, supra, pág. 522, un "apreciable beneficio para la empresa". El contexto donde se desarrolló esta teoría es el de la empresa privada que opera para fines de lucro. Este no es el caso de los municipios, ya que éstos nos son "empresas" que existen primordialmente para obtener beneficios económicos. Imponer responsabilidad a los municipios bajo esta norma obstaculizaría significativamente la debida ejecución y realización de las funciones de los municipios que, a fin de cuentas, están destinadas a beneficiar la salud, la seguridad y el bienestar del pueblo de Puerto Rico.

*Por los fundamentos antes expresados, se expide el auto y se revoca parcialmente la sentencia del tribunal de instancia para desestimar la demanda contra el Municipio de Cataño. Así modificada se confirma.*

El Juez Asociado Señor Rebollo López concurrió con el resultado con opinión escrita. La Juez Asociada Señora Naveira de Rodón y el Juez Asociado Señor Hernández Denton concurrieron con el resultado sin opinión escrita.

— O —

Opinión concurrente emitida por el Juez Asociado Señor Rebollo López.

Concurrimos, *únicamente*, con el *resultado* a que se llega en la Opinión emitida en el presente caso por una

---

"El campo de la responsabilidad civil en la vida contemporánea se ha extendido con el advenimiento de actividades que aun cuando entrañan previsible riesgo de daño son permitidas en atención a su preponderante interés social. Las antiguas fórmulas jurídicas, como la teoría de que no hay responsabilidad sin culpa, sufren la erosión de excepciones orientadas a la necesidad de indemnizar el daño con independencia de la culpa siempre que aparezca de una actividad arriesgada que se traduce en apreciable beneficio para la empresa."

mayoría de los integrantes del Tribunal; ello por dos (2) fundamentos.

En primer lugar, somos del criterio que el Tribunal comete un serio y grave error al continuar perpetuando la errónea norma que estableció en *Martínez v. Chase Manhattan Bank*, 108 D.P.R. 515 (1979); norma jurisprudencial que ha causado terrible confusión en nuestra jurisdicción y cuya perdurabilidad resulta verdaderamente sorprendente.

Ello nos lleva a nuestro segundo fundamento para meramente concurrir con la Opinión mayoritaria emitida. En la misma lo que se hace es *reiterar* la norma establecida en *Martínez v. Chase Manhattan Bank*, ante, y "explicar" por qué dicha norma no es aplicable a los hechos del presente caso. Dicho de otra forma, el recurso debió ser resuelto mediante la emisión de una simple "Sentencia" y no mediante el mecanismo procesal decisorio de la "Opinión". Para llegar a dicha conclusión, basta con que uno se haga la siguiente pregunta: aparte de resolver que el municipio demandado no es responsable por los daños sufridos por la parte demandante, ¿qué abona, o añade, a nuestro acervo jurisprudencial la ponencia emitida?