Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| JANNETTE ROSA RULLÁN, CHELSEA FLANAGAN ROSA<br><br>Recurridas<br><br><br>V.<br><br><br><br>TOTE MARITIME PUERTO RICO, LLC Y OTROS<br><br>Peticionarias | KLCE202500274 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Carolina<br><br>Caso Núm.: CA2023CV00414<br><br>Sobre: Daños y Perjuicios |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Marrero Guerrero, el Juez Campos Pérez y el Juez Sánchez Báez.

Marrero Guerrero, Juez ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 25 de junio de 2025.

Comparece TOTE Maritime Puerto Rico, LLC. (TOTE Maritime o peticionaria) mediante una *Petición de Certiorari* en la que nos solicita que revisemos una *Resolución* emitida el 16 de enero de 2025 por el Tribunal de Primera Instancia, Sala Superior de Carolina (TPI).[1] Allí, el TPI denegó la *Solicitud de Sentencia Sumaria* presentada por la peticionaria para que se desestimara con perjuicio la *Demanda* incoada en su contra por la Sra. Jannette Rosa Rullán (señora Rosa Rullán) y la Sra. Chelsea Flanagan Rosa (señora Flanagan Rosa) (en conjunto, recurridas).

Por los fundamentos que expondremos a continuación, declinamos expedir el auto de *certiorari* solicitado por la peticionaria.

---

[1] Apéndice de la *Petición de Certiorari*, Anejo V, págs. 316-318. Archivada y notificada en autos el 17 de enero de 2025.

Número Identificador
RES2025_____

**-I-**

El presente caso tuvo su génesis el 10 de febrero de 2023, cuando las recurridas incoaron una acción de daños y perjuicios en contra de la peticionaria, junto a otros demandados.[2] En esta, alegaron que el señor Timothy Flanagan Rosa (señor Flanagan Rosa) falleció el 13 de abril de 2019 como consecuencia de un accidente automovilístico a la altura del kilómetro 3.8 del Expreso Baldorioty de Castro, al impactar por la parte trasera un camión que arrastraba un furgón perteneciente a TOTE Maritime. En esencia, arguyeron que la peticionaria respondía por la muerte del señor Flanagan Rosa ya que el furgón no contaba con el parachoques trasero que pudo haber evitado su fallecimiento. En específico, sostuvieron que, de acuerdo con un informe pericial, el vehículo del señor Flanagan Rosa no hubiera penetrado por debajo del furgón, de este haber contado con la pieza de seguridad.

Lo anterior, adujeron las recurridas, reflejaba una violación crasa de la peticionaria a su deber jurídico por no cumplir con los estándares exigidos por el *Code of Federal Regulations*, el *Federal Motor Vehicle Safety Standards*, la Administración Nacional de Seguridad del Tráfico en las Carreteras y la Ley de Vehículos y Tránsito de Puerto Rico, que exigen el referido parachoques en la parte trasera de los furgones.

Tras varios trámites procesales, el 15 de septiembre de 2023, TOTE Maritime presentó una *Contestación a Demanda*.[3] En síntesis, negó la negligencia atribuida y esbozó que los actos por los cuales falleció el señor Flanagan Rosa fueron provocados por éste al conducir el vehículo de motor en exceso de velocidad y bajo los efectos de sustancias controladas.

---

[2] *Íd.,* Anejo I, págs. 1-6.
[3] *Íd.,* Anejo II, págs. 7-31.

El 29 de octubre de 2024, luego de finalizar la etapa de descubrimiento de prueba, la peticionaria presentó una *Solicitud de Sentencia Sumaria Parcial.*[4] En ella, alegó que procedía la disposición sumaria del caso instado en su contra toda vez que no existía prueba de la negligencia imputada; el arrastre no era de su propiedad; el furgón y el camión eran considerados una sola unidad, una vez el primero es conectado al segundo, y el dueño del camión nunca fue emplazado; el furgón no adolecía de ningún defecto de fábrica; y, de existir alguno, TOTE Maritime no respondía por ellos.

En adición, sostuvo que no era el titular del arrastre, sino un arrendador que entregó la posesión, control y custodia del furgón al camionero autorizado.

Siendo así, adujo que estaba cobijado por la protección estatutaria federal del *Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users* (SAFETEA-LU), 49 USC sec. 30160, la cual, según alega, fue incorporada en el Artículo 21.01 de la Ley Núm. 22-2000, mejor conocida como la *Ley de Vehículos y Tránsito de Puerto Rico*, según enmendada, 9 LPRA sec. 5621 (Ley 22), y releva de responsabilidad a los arrendadores de vehículos por los actos u omisiones de los conductores a quienes le alquilen los vehículos.

Propuso los siguientes como hechos materiales incontrovertidos:

> 1. El arrastre ("chasis") STRI, TSFZ568152, tablilla del Estado de Maine, 35TLR20539, fue fabricado por Hercules Enterprises. **Anejo II [Fotografías tomadas por la Oficina de Servicios Técnicos de la Policía de Puerto Rico, páginas 2, 7 y 12]; Anejo IX [Informe Pericial a las páginas 5 y 7 de 25]; Anejo X [Declaración Jurada]**.
>
> 2. Direct Chassis Link, Inc. (sucesor de Interpool, Inc. d/b/a TRAC Intermodal, -antes TRAC International o TRAC Lease, Inc.), una corporación foránea, es el titular del arrastre ("chasis") STRI, TSFZ568152, tablilla del Estado de Maine, 35TLR20539. **Anejo VI [Chassis Lease Agreement]; Anejo X [Declaración Jurada]**.

---

[4] *Íd.,* Anejo III, págs. 32-230.

3. El 6 de abril de 1995, TRAC Lease, Inc. y Sea-Barge, Inc. firmaron un "CHASSIS LEASE AGREEMENT", que incluye el arrendamiento del arrastre ("chasis") STRI, TSFZ568152, tablilla del Estado de Maine, 35TLR20539. **Anejo VI [Chassis Lease Agreement]; Anejo X [Declaración Jurada]**.

4. El 1 de septiembre de 2015, Interpool, Inc. d/b/a TRAC Intermodal (antes TRAC Lease, Inc.) y Sea Star Line, LLC. firmaron un "Chassis Lease Agreement" y "Amendment to Chassis Lease Agreement", que incluye el arrendamiento del arrastre ("chasis") STRI, TSFZ568152, tablilla del Estado de Maine, 35TLR20539. **Anejo VII [Chassis Lease Agreement y sus enmiendas]; Anejo X [Declaración Jurada]**.

5. Sea Star Line, LLC. cambió su nombre a TOTE Maritime Puerto Rico, LLC., registro número 818 ante el Departamento de Estado. **Anejo X [Declaración Jurada]**.

6. El 18 de diciembre de 2020, Direct Chassis Link, Inc. y TOTE Maritime Puerto Rico, LLC. firmaron un "Amendment #2 to Chassis Lease Agreement" y "Amendment to Chassis Lease Agreement", que incluye el arrendamiento del arrastre ("chasis") STRI, TSFZ568152, tablilla del Estado de Maine, 35TLR20539. **Anejo VII [Chassis Lease Agreement y sus enmiendas]; Anejo X [Declaración Jurada]**.

7. El 10 de enero de 2018, Luis Taveras Taveras y TOTE Maritime Puerto Rico, LLC. firmaron un "Equipment Interchange Contract". **Anejo VIII [Equipment Interchange Contract]**.

8. Mediante contrato, Luis Taveras Taveras se hizo enteramente responsable del arrastre ("chasis") STRI, TSFZ568152, tablilla del Estado de Maine, 35TLR20539, e incluso aseguró el mismo. **Anejo V [Bill of Lading]; Anejo VIII [Equipment Interchange Contract]; Anejo X [Declaración Jurada]**.

9. El 13 de abril de 2018, ocurrió un accidente de tránsito en la carretera PR26 (Expreso Román Baldorioty de Castro), cerca del kilómetro 3.8, entre el vehículo Honda, Fit, 2010, tablilla HSP-510 y el camión Kenworth, modelo W900, tablilla 302-90, del año 1987. **Anejo I [Informe de Accidente de Tránsito, número 2018-1-199-2094]; Anejo II [Fotografías tomadas por la Oficina de Servicios Técnicos de la Policía de Puerto Rico]; Anejo IV [Declaración Jurada del Sr. Juan Pérez Santiago]**.

10. El accidente fue investigado por el agente de la Policía de Puerto Rico, específicamente el agente Ángel L. Bermúdez Oquendo, placa 34907, quien redactó el Informe de Accidente de Tránsito, número 2018-1-199- 2094. **Anejo I [Informe de Accidente de Tránsito, número 2018-1-199-2094]**.

11. A la fecha del 13 de abril de 2018, Timothy G. Flanagan Rosa conducía el vehículo Honda, Fit, 2010, tablilla HSP-510. **Anejo I [Informe de Accidente de Tránsito, número 2018-1-199-2094, página 1]**.

12. A la fecha del 13 de abril de 2018, Timothy G. Flanagan Rosa era el titular del vehículo Honda, Fit, 2010, tablilla HSP-510. **Anejo I [Informe de Accidente de Tránsito, número 2018-1-199-2094, página 1]**.

13. A la fecha del 13 de abril de 2018, Juan Pérez Santiago conducía el camión Kenworth, modelo W900, tablilla 30290-R, del año 1987. **Anejo I [Informe de Accidente de Tránsito, número 2018-1-199-2094, página 1]; Anejo IV [Declaración Jurada del Sr. Juan Pérez Santiago]**.

14. A la fecha del 13 de abril de 2018, Luis Taveras Taveras era el titular del camión Kenworth, modelo W900, tablilla 30290-R, del año 1987. **Anejo I [Informe de Accidente de Tránsito, número 2018-1-199-2094, página 1]; Anejo II [Fotografías tomadas por la Oficina de Servicios Técnicos de la Policía de Puerto Rico, a la página 5 y 6]; Anejo IV [Declaración Jurada del Sr. Juan Pérez Santiago]**.

15. A la fecha del 13 de abril de 2018, el arrastre ("chasis") STRI, TSFZ568152, tablilla del Estado de Maine, 35TLR20539, contaba con un elemento horizontal o barra horizontal de parachoques trasero que se extiende a menos de 4 pulgadas de cada extremo lateral del mismo. **Anejo II [Fotografías tomadas por la Oficina de Servicios Técnicos de la Policía de Puerto Rico, páginas]; Anejo IX [Informe Pericial a las páginas 5 a la 8 y 16 a la 25 de 25]**.

16. A la fecha del 13 de abril de 2018, el arrastre ("chasis") STRI, TSFZ568152, tablilla del Estado de Maine, 35TLR20539, contaba con un elemento horizontal o barra horizontal de parachoques trasero instalado a 20 pulgadas del suelo. **Anejo II [Fotografías tomadas por la Oficina de Servicios Técnicos de la Policía de Puerto Rico, páginas]; Anejo IX [Informe Pericial a las páginas 5 a la 8 y 16 a la 25 de 25]**.

17. A la fecha del 13 de abril de 2018, el arrastre ("chasis") STRI, TSFZ568152, tablilla del Estado de Maine, 35TLR20539 estaba siendo utilizado por MVC Logistics, Corp., y trasportado por el camión Kenworth, modelo W900, tablilla 30290-R, del año 1987, propiedad de Luis Taveras Taveras. **Anejo I [Informe de Accidente de Tránsito, número 2018-1-199-2094, páginas 3, 27 a la 29 y 33 a la 35]; Anejo II [Fotografías tomadas por la Oficina de Servicios Técnicos de la Policía de Puerto Rico, a la página 5 y 6]; Anejo IV [Declaración Jurada del Sr. Juan Pérez Santiago]; Anejo V [Bill of Lading]; Anejo X [Declaración Jurada]**.

18. A la fecha del 13 de abril de 2018, el arrastre ("chasis") STRI, TSFZ568152, tablilla del Estado de Maine, 35TLR20539, tenía montado un vagón STRU8809288 con mercancía de Aqua Export, Inc. **Anejo I [Informe de Accidente de Tránsito, número 2018-1-199-2094, páginas 3, 27 a la 29 y 33 a la 35]; Anejo II [Fotografías tomadas por la Oficina de Servicios Técnicos de la Policía de Puerto Rico, a la página 5 y 6]; Anejo IV [Declaración Jurada del Sr. Juan Pérez Santiago]; Anejo V [Bill of Lading]; Anejo X [Declaración Jurada]**.

19. En la escena del accidente se ocupó marihuana perteneciente a Timothy G. Flanagan Rosa. **Anejo I [Informe de Accidente de Tránsito, número 2018-1-199-2094, página 21]; Anejo II [Fotografías tomadas por la Oficina de Servicios Técnicos de la Policía de Puerto Rico, página 10]**.

20. En la escena del accidente se ocupó oxicodona perteneciente a Timothy G. Flanagan Rosa. **Anejo II**

**[Fotografías tomadas por la Oficina de Servicios Técnicos de la Policía de Puerto Rico, página 11]**.

21. Según el Certificado de Análisis Toxicológico, Timothy G. Flanagan Rosa, dio resultados positivos para benzoilecgonina y tetrahydrocannabinol (THC). **Anejo III [Certificado de Análisis Toxicológico]**.

22. Según surge del Informe de Accidente de Tránsito, número 2018-1-199- 2094, quien provocó el accidente fue Timothy G. Flanagan Rosa. **Anejo I [Informe de Accidente de Tránsito, número 2018-1-199-2094, página 3]**.[5]

Acompañó su solicitud con los siguientes documentos: **(1)** Anejo I – Informe de Accidente de Tránsito; **(2)** Anejo II – Fotografías tomadas por la Policía; **(3)** Anejo III – Certificado de análisis toxicológico; **(4)** Anejo IV – Declaración Jurada del señor Juan Pérez Santiago, chofer del camión envuelto en el accidente; **(5)** Anejo V – *Bill of Lading*; **(6)** Anejo VI – *Master Equipment Lease Agreement*; **(7)** Anejo VII – *Chassis Lease Agreement*; **(8)** Anejo VIII – *Equipment Interchange Contract*; **(9)** Anejo IX – Informe pericial del ingeniero Hernán Mercado-Corujo; **(10)** Anejo X – Declaración Jurada del señor Eduardo Pagán Reyes, agente y representante de TOTE Maritime.

Por su parte, el 13 de enero de 2025, las recurridas presentaron una *Oposición a Sentencia Sumaria Parcial*.[6] En esta, arguyeron que no procedía la resolución sumaria del caso toda vez que se trataba de un asunto sobre la determinación de negligencia y que la prueba en la que se fundamentó TOTE Maritime en su solicitud constituía prueba de referencia en esa etapa procesal.

En adición, sostuvo que no aplicaban las disposiciones del SAFETEA-LU ni la Ley 22 dado que el peticionario no era una entidad que se dedicara al arrendamiento de vehículos, sino que se beneficiaba económicamente de un contratista a través de un contrato de acarreo. Consonó con lo anterior, adujo que TOTE

---

[5] *Íd.,* págs. 34-37. (Negrillas en el original).
[6] Apéndice de la *Petición de Certiorari*, Anejo IV, págs. 231-315.

Maritime respondía vicariamente bajo la doctrina del beneficio económico.

Acompañaron junto con su escrito en oposición los siguientes documentos: **(1)** Informe pericial del ingeniero Juan F. Charles; **(2)** Contestación de la señora Rosa Rullán al primer Pliego de Interrogatorio y Producción de Documentos; **(3)** Contestación de la señora Flanagan Rosa al primer Pliego de Interrogatorio y Producción de Documentos.

Así las cosas, el 16 de enero de 2025, el TPI emitió una *Resolución* en la que declaró *No Ha Lugar* la solicitud de sentencia sumaria.[7] El foro primario determinó que existía una controversia real y sustancial sobre el hecho número 22 propuesto por TOTE Maritime como incontrovertido, el cual plantea que el accidente fatal fue provocado por el señor Flanagan Rosa. De igual manera, dictaminó que había controversia sobre elementos subjetivos de credibilidad y negligencia, que impedía la resolución sumaria del caso.

Ante esto, el 31 de enero de 2025, el peticionario presentó una *Solicitud de Reconsideración.* [8] Allí, esbozó que no existía controversia en cuanto a que el accidente automovilístico fue causado únicamente por los actos negligentes del señor Flanagan Rosa toda vez que tanto el informe policíaco como el pericial no le atribuyen la responsabilidad a TOTE Maritime ni al chofer del camión. En adición, sostuvo que los referidos informes no constituían prueba de referencia. Específicamente, adujo que el informe policíaco goza de una presunción de autenticación, credibilidad y certeza por tratarse de un documento público, y no está sujeto a la regla general de exclusión de la prueba de referencia

---

[7] *Íd.,* Anejo V, págs. 316-318. Archivada y notificada en autos el 17 de enero de 2025.
[8] *Íd.,* Anejo VI, págs. 319-333.

al amparo de la Regla 805 (H) de Evidencia, *infra*. Asimismo, expresó que los informes periciales, aunque podían considerarse prueba de referencia, eran igualmente admisibles por estar basados en ciertas admisiones de las propias demandantes parte y en el informe policíaco.

También, argumentó que TOTE Maritime no respondía por cualquier defecto del "chasis" ya que el mismo no era de su propiedad, había sido cedido a MVC Logistics, Corp., y estaba conectado al camión propiedad del Sr. Luis Taveras.

El 18 de febrero de 2025, las recurridas presentaron una *Oposición a Solicitud de Reconsideración* en la que reafirmaron los planteamientos expuestos en su oposición a la solicitud de sentencia sumaria.[9]

El 18 de febrero de 2025, el TPI emitió una *Resolución Interlocutoria* en la que declaró *No Ha Lugar* el petitorio de reconsideración.[10]

Inconforme, la peticionaria acudió ante nos mediante el recurso que nos ocupa y le imputó al foro *a quo* la comisión de los siguientes errores:

> ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA Y ABUSÓ DE SU DISCRECIÓN AL OBVIAR LA PRUEBA ADMISIBLE; NEGARSE A APLICAR DE MANERA INFUNDADA, CONTRARIA A DERECHO, PREJUICIADA, PARCIALIZADA, DISCORDANTE Y DESACERTADA [D]EL LENGUAJE CLARO Y ESPECÍFICO DE LAS REGLAS DE EVIDENCIA; Y AL CONCLUIR QUE EXISTE CONTROVERSIA SOBRE EL HECHO PROPUESTO POR TOTE NÚMERO 22 DE LA SOLICITUD DE SENTENCIA SUMARIA PARCIAL, QUE LEE: "SEGÚN SURGE DEL INFORME DE ACCIDENTE DE TRÁNSITO, NÚMERO 2018-1-199-2094, QUIEN PROVOCÓ EL ACCIDENTE FUE TIMOTHY G. FLANAGAN ROSA", CUANDO LA PARTE DEMANDANTE-RECURRIDA NUNCA HA IMPUGNADO DICHO INFORME Y ADMITE QUE EL ACCIDENTE FUE PROVOCADO POR LOS ACTOS DEL SR. FLANAGAN.

---

[9] *Íd.,* Anejo VII, págs. 334-340.
[10] *Íd.,* Anejo VIII, pág. 341. Archivada y notificada en autos el 19 de febrero de 2025.

ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA EN CLARO MENOSPRECIO DEL DERECHO VIGENTE SOBRE LA SENTENCIA SUMARIA Y ABUSÓ DE SU DISCRECIÓN AL DENEGAR LA SOLICITUD DE SENTENCIA SUMARIA PARCIAL POR INSUFICIENCIA DE PRUEBA Y CONCLUIR QUE EXISTE CONTROVERSIA SOBRE "OTROS ELEMENTOS SUBJETIVOS COMO CREDIBILIDAD, NEGLIGENCIA QUE IMPIDEN DICTAR SENTENCIA SUMARIA EN ESTOS MOMENTOS", SIN IDENTIFICAR NINGUNO.

En vista de los errores imputados, procedemos a discutir las normas jurídicas aplicables a este recurso.

**-II-**

**-A-**

El *certiorari* es un recurso extraordinario cuya característica se asienta en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023); véase, además, *McNeil Healthcare v. Mun. Las Piedras I*, 206 DPR 391, 403-404, (2021); *800 Ponce de León v. AIG*, 205 DPR 163, 174 (2020), *IG Builders et al. v. BBVAPR*, 185 DPR 307, 338 (2012). En consecuencia, este Tribunal tiene la obligación de ejercer prudentemente su juicio al intervenir con el discernimiento del TPI. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008).

La Regla 52.1 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 52.1, establece las instancias en las que este Tribunal posee autoridad para expedir el auto de *certiorari* sobre materia civil. S*cotiabank de Puerto Rico v. ZAF Corporation, et al.*, 202 DPR 478, 488 (2019). Por su parte, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, prescribe los criterios que debemos tomar en consideración al momento de determinar si expedimos o denegamos el auto solicitado:

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

De no estar presente algunos de estos criterios, corresponde abstenernos de expedir el auto de *certiorari*.

**-B-**

La sentencia sumaria es un mecanismo procesal que permite que un caso se disponga ágilmente, sin la celebración de un juicio, siempre que no se presenten controversias genuinas de hechos materiales. *Cruz Cruz v. Casa Bella y otros*, 213 DPR 980, 993 (2024); *Birriel Colón v. Supermercado Los Colobos*, 213 DPR 80, 90 (2023); *Segarra Rivera v. Int'l. Shipping et al.*, 208 DPR 964, 979 (2022); *SLG Fernández-Bernal v. RAD-MAN et al.*, 208 DPR 310, 334 (2021). A esos efectos, un hecho material es uno esencial y pertinente, que puede afectar el resultado de la reclamación conforme al derecho sustantivo aplicable. *Cruz Cruz v. Casa Bella y otros, supra*; *Banco Popular v. Posada*, 2024 TSPR 62, 213 DPR ___ (2024); *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010); véase, además, Regla 36.1 de Procedimiento Civil, *supra*, R. 36.1. Además, la controversia sobre el hecho material debe ser real. *Ramos Pérez v. Univisión, supra*. En otras palabras, debe ser de calidad suficiente para que el juzgador dirima por virtud de un juicio plenario. *Íd.*

Cónsono con lo anterior, la Regla 36.3(e) de Procedimiento Civil, *supra*, R. 36.3 (e), establece que procede dictar una moción de sentencia sumaria si las alegaciones, deposiciones, contestaciones a

interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas u otra evidencia demuestran que no existe una controversia real sustancial en torno a un hecho esencial y pertinente. Véase, además, *Birriel Colón v. Supermercado Los Colobos, supra*; *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 109 (2015); *SLG Zapata-Rivera v. JF Montalvo*, 189 DPR 414, 430 (2013).

Por otra parte, la parte que se opone a la solicitud de sentencia sumaria deberá refutar los hechos materiales que entienda están en disputa con evidencia sustancial. *Birriel Colón v. Supermercado Los Colobos, supra*; *SLG Fernández-Bernal v. RAD-MAN et al., supra*, págs. 336-337. Claro está, si la petición de sentencia sumaria está sustentada con declaraciones juradas u otra prueba, la parte promovida no puede descansar en meras alegaciones, sino que deberá contestar de una forma tan detallada y específica como lo haya hecho la parte promovente. *Birriel Colón v. Supermercado Los Colobos, supra*; *Ramos Pérez v. Univisión, supra*, pág. 215; Regla 36.3 (c) de Procedimiento Civil, *supra*, R. 36.3 (c). De lo anterior, incluso si no se presenta prueba para controvertir la evidencia presentada, ello no conduce a la concesión automática de una solicitud de sentencia sumaria. *Birriel Colón v. Supermercado Los Colobos, supra*; *SLG Fernández-Bernal v. RAD-MAN et al., supra*, pág. 337.

Ahora bien, **no es aconsejable dictar sentencia sumaria cuando existe controversia sobre asuntos de credibilidad o sobre aspectos subjetivos como la intención, el propósito mental o la negligencia**. *Cruz Cruz v. Casa Bella y otros, supra*; *Aponte Valentín et al. v. Pfizer Pharm.*, 208 DPR 263, 278 (2021).

Asimismo, es importante resaltar que el principio rector que debe guiar al juez de instancia en la determinación sobre si procede o no la sentencia sumaria es "**el sabio discernimiento, ya que mal utilizada puede prestarse para privar a un litigante de su 'día en corte', principio elemental del debido proceso de ley**." *Mun. de*

*Añasco v. ASES et al.*, 188 DPR 307, 327-328 (2013). (Énfasis nuestro). (Citas omitidas).

Por otro lado, nuestro Tribunal Supremo ha reconocido que se puede dictar sentencia sumaria bajo la modalidad de insuficiencia de prueba. *Rodríguez Méndez v. Laser Eye,* 195 DPR 769, 786 (2016); *Medina Morales v. MS & D Química PR, Inc.,* 135 DPR 716, 732-35 (1994). Esta modalidad procede cuando la parte demandante no cuenta con evidencia suficiente para probar su caso luego de haber transcurrido un descubrimiento de prueba adecuado y suficiente. *Íd.* No obstante, para que prospere se requiere del promovente que establezca que: (1) el juicio en su fondo es innecesario; (2) el demandante no cuenta con evidencia suficiente para probar algún hecho esencial a su reclamación; y, que (3) como cuestión de derecho procede la desestimación de la reclamación. *Íd. Pérez Rosado v. El Vocero*, 149 DPR 427, 447 (1999). Si la parte promovente, luego de haber transcurrido un tiempo adecuado y razonable para el descubrimiento de prueba, puede demostrar que del récord del tribunal surge que la parte promovida no cuenta con evidencia suficiente para probar un elemento esencial de su caso sobre la cual tiene el peso de la prueba, procede que se dicte sentencia sumaria para desestimar la demanda. *Medina Morales v. MS & D Química PR, Inc., supra.*

El promovente de una moción de sentencia sumaria en su modalidad de insuficiencia de prueba no puede descansar solo en una simple alegación de que el demandante no tiene evidencia suficiente para probar su caso. Es decir, tiene que demostrar que se ha llevado a cabo un descubrimiento de prueba completo, adecuado y apropiado. Ello significa que tiene que presentarle al tribunal suficientes elementos de juicio para poder evaluar cuán adecuado fue el descubrimiento realizado. *Medina Morales v. M.S. & D. Química P.R., Inc., supra*, pág. 733.

Por su parte, para poder derrotar una moción de sentencia sumaria bajo la modalidad de la insuficiencia de prueba el promovido puede: (1) presentar una oposición conteniendo prueba admisible en evidencia, o prueba que pueda convertirse en admisible, o que dé lugar a prueba admisible, que demuestre la existencia de evidencia para probar los elementos esenciales de su caso; (2) alegar que hay prueba en el récord que puede convertirse en admisible que derrotaría la contención de insuficiencia; (3) exponer que la moción es prematura porque el descubrimiento es inadecuado, está a medias o no se ha realizado; o, (4) que el caso, por su naturaleza, no es uno conveniente para que se resuelva por el mecanismo de sentencia sumaria. *Medina Morales v. MS & D Química PR, Inc., supra*, pág. 734.

Sostiene el tratadista Echavarría Vargas que, "la solicitud de sentencia sumaria por insuficiencia de prueba solo debe prosperar en aquellas ocasiones en las cuales no exista ninguna prueba. No es un asunto de credibilidad o de fuerza de la prueba, sino de inexistencia de evidencia." J. A. Echavarría Vargas, *Procedimiento Civil Puertorriqueño*, Ed., Colombia, 2012, pág. 221.

Así pues, "a la modalidad de la sentencia sumaria por insuficiencia de prueba le aplican todas las normas y los principios que tradicionalmente hemos indicado deben utilizarse por los tribunales para entender en una moción de sentencia sumaria. Por lo tanto, **cuando existe duda sobre . . . si hay una controversia de hecho, esa duda debe resolverse a favor de la parte que se opone a la solicitud de sentencia sumaria**". *Medina Morales v. MS & D Química PR, Inc., supra*, pág. 734. (Énfasis nuestro).

Finalmente, nuestro Tribunal Supremo estableció en *Meléndez González et al. v. M. Cuebas, supra*, el estándar específico que este Tribunal de Apelaciones debe seguir al revisar denegatorias o concesiones de solicitudes de sentencia sumaria.

Primero, nos encontramos en la misma posición que el foro primario al momento de revisar las mociones de sentencia sumaria. *Íd.*, pág. 118. En otras palabras, se aplicarán los mismos criterios que la Regla 36 de Procedimiento Civil, *supra,* R. 36, le exige al foro *a quo.* Así pues, este Tribunal está llamado a llevar a cabo una revisión *de novo.* Sin embargo, no podemos considerar evidencia que las partes no presentaron ante el TPI, y debemos examinar el expediente de la forma más favorable hacia la parte opositora de la moción de sentencia sumaria, realizando todas las inferencias permisibles a su favor. *Meléndez González et al. v. M. Cuebas, supra*, pág. 116.

Segundo, al encontrarnos en la misma posición que el foro de instancia, debemos revisar que tanto la petición de sentencia sumaria como su oposición cumplan con los requisitos de la Regla 36 de Procedimiento Civil, *supra,* y los discutidos en el caso de *SLG Zapata-Rivera v. JF Montalvo, supra*; *Meléndez González et al. v. M. Cuebas, supra*, pág. 118.

Tercero, este Tribunal debe revisar si en realidad existen hechos materiales en controversia. *Íd.* De haberlos, debemos cumplir con la exigencia establecida en la Regla 36.4 de Procedimiento Civil, *supra,* R. 36.4, y exponer cuáles son los hechos materiales que están en controversia y cuáles son incontrovertidos. *Meléndez González et al. v. M. Cuebas, supra.*

Cuarto y último, si este Tribunal determina que no existen hechos materiales en controversia, entonces procederemos a revisar si el TPI aplicó correctamente el derecho. *Íd.*, pág. 119.

**-C-**

Sabido es que la responsabilidad civil extracontractual emana del Artículo 1802 del Código Civil, 31 LPRA ant. sec. 5141

(derogado)[11] el cual, a tales efectos, disponía que quien "por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado." *Íd. Colón Santos v. Coop. Seg. Mult. PR*, 173 DPR 170, 177 (2008).

En reiteradas ocasiones, nuestro Más Alto Foro ha expresado que:

> [P]ara que prospere una reclamación en daños y perjuicios al amparo del Art. 1802 del Código Civil, *supra*, se requiere la concurrencia de los siguientes tres elementos, los cuales tienen que ser probados por la parte demandante: (1) el acto u omisión culposa o negligente; (2) la relación causal entre el acto u omisión culposa o negligente y el daño ocasionado; y (3) el daño real causado al reclamante.

*Nieves Díaz v. González Massas,* 178 DPR 820, 843 (2010).

Asimismo, nuestro Máximo Foro ha definido la culpa o negligencia como la "falta del debido cuidado, esto es, no anticipar ni prever las consecuencias racionales de un acto, o de la omisión de un acto, que una persona prudente habría de prever en tales circunstancias." *Montalvo v. Cruz,* 144 DPR 748, 755 (1998).

Cónsono con lo anterior, a través de la jurisprudencia observamos que un elemento esencial de la responsabilidad civil extracontractual es el factor de la previsibilidad. Para determinar si el resultado era razonablemente previsible, es preciso acudir a la figura del hombre prudente y razonable, quien es aquella persona que actúa con el grado de cuidado, diligencia, vigilancia y precaución que exigen las circunstancias. *Nieves Díaz v. González Massas, supra,* a la pág. 844. Si el daño es previsible por éste, hay responsabilidad; si no es previsible, estamos generalmente en presencia de un caso fortuito. *Montalvo v. Cruz, supra,* a la pág. 756.

El deber de cuidado incluye, tanto la obligación de anticipar, como la de evitar la ocurrencia de daños cuya probabilidad es razonablemente previsible. Sin embargo, el deber de anticipar y

---

[11] Por tratarse de hechos ocurridos con anterioridad a la aprobación y vigencia del Nuevo Código Civil (Ley Núm. 55 de 1 de enero de 2020), nos limitaremos a discutir las disposiciones aplicables y correspondientes al Código Civil de 1930.

prever los daños no se extiende a todo riesgo posible. Lo esencial en estos casos es "que se tenga el deber de prever en forma general las consecuencias de determinada clase." *Íd.* Sobre este particular, el Tribunal Supremo ha sido enfático al expresar que "sin la existencia de este deber de cuidado mayor no puede responsabilizarse a una persona porque no haya realizado el acto de que se trate." *Hernández v. Televicentro*, 168 DPR 803, 813-814 (2006).

Por otro lado, uno de los asuntos argumentados ante nos la doctrina de beneficio económico. Esta se basa en que la responsabilidad de un principal por los actos negligentes de su contratista independiente puede emanar del hecho central de que el principal, que es una empresa privada que opera con fines de lucro, se beneficia económicamente de la labor que, a cuenta suya, está realizando dicho contratista. *Martinez v. Chase Manhattan Bank*, 108 DPR 515 (1979).

Respecto a lo anterior, nuestro Máximo Foro ha resuelto que bajo esta doctrina se requiere que la empresa privada que está operando con fines de lucro perciba un apreciable beneficio para poder imponerle responsabilidad por un acto negligente o culposo del contratista independiente. *López v. Gobierno Mun. Cataño*, 131 DPR 694, 711 (1992); véase, además, *Martinez v. Chase Manhattan Bank*, *supra*, pág. 522.

De lo anterior surge claramente que si, en el contexto de la empresa privada, un principal está obteniendo unos beneficios económicos de la tarea que está realizando su contratista independiente, la primera pudiera responder de los daños que dicho contratista cause por su negligencia al prestar los servicios para los cuales fue contratado. Esta doctrina encuentra apoyo en la tendencia moderna en materia de daños basada en una responsabilidad civil objetiva, es decir, responsabilidad con independencia de culpa, en la cual, a quien crea un riesgo o una

situación de peligro, de la cual también se beneficia y se lucra con ella, se le impone la necesidad y responsabilidad de soportar las desventajas que de la misma se deriven, incluyendo la indemnización de los daños sufridos por un tercero. Luis Díez-Picazo y Antonio Gullón, *Sistema de Derecho Civil*, Madrid, Editorial Tecnos, S.A., 1994, Sexta Ed., Vol. II, Cap. 5, Sec. IX, pág. 610; José Puig Brutau, *Fundamento de Derecho Civil*, Barcelona, Bosch Casa Editorial, S.A., 1983, Tomo II, Vol. II, Cap. V, págs. 137-142.

**-D-**

En cuanto a la Responsabilidad de dueños de vehículos de motor cuando medie culpa o negligencia, el Art. 21.01 de la Ley de Vehículos y Tránsito, Ley Núm. 22-2000, según enmendada, 9 LPRA sec. 5621, establece:

> El dueño de cualquier vehículo de motor será responsable de los daños y perjuicios que se causen mediante la operación de dicho vehículo, interviniendo culpa o negligencia, cuando el referido vehículo sea operado o esté bajo el control físico y real de cualquier persona que, con el fin principal de operarlo, o de hacer o permitir que el mismo sea operado por una tercera persona, obtenga su posesión mediante la autorización expresa o tácita del dueño. En todo caso se presumirá, salvo prueba en contrario, que la persona que opera o tiene bajo su control un vehículo de motor ha obtenido su posesión con la autorización de su dueño, con el fin principal de operarlo, o de hacer o permitir que sea operado por una tercera persona.

> La persona por cuya negligencia haya de responder el dueño de un vehículo, de acuerdo con las disposiciones de esta sección, vendrá obligada a indemnizar a éste.

> En ausencia de negligencia o conducta criminal, el dueño de un vehículo de motor que se dedica al alquiler de vehículos de motor no será responsable de los daños ocasionados a terceros como resultado del uso, operación o posesión del vehículo de motor por un arrendatario bajo la vigencia de un contrato de alquiler a corto o largo plazo.

Por su parte, antes citada Ley establece que Vehículo significará todo artefacto o animal en el cual o por medio del cual cualquier persona o propiedad es o puede ser transportada o llevada por una vía pública, exceptuando aquellos que se usen exclusivamente sobre vías férreas. Arrastre o *trailer* significará todo vehículo carente de fuerza motriz para su movimiento, con dos (2) o

más ejes de carga, diseñado y construido para cargar bienes sobre o dentro de su propia estructura y ser tirado por un vehículo de motor, sin que éste tenga que soportar totalmente o parcialmente el peso de la carga.  9 LPRA sec. 5001, incisos (100) y (7).

Respecto a ambas figuras en el contexto de la responsabilidad civil extracontractual, en *González v. Seatrain Lines of Puerto Rico*, 106 DPR 494 (1977) el Tribunal Supremo determinó que el dueño de un arrastre es solidariamente responsable con el dueño y conductor de un vehículo remolcador cuando ocurra un accidente causado por la unidad móvil que ambos vehículos constituyen.  Esto último, porque debido a su naturaleza, diseño y modo de operar, tanto el vehículo como el arrastre constituyen una sola unidad para propósitos de la Ley.  En *Rivera Otero v. Casco Sales Co.*, 115 DPR 662 (1984), el Tribunal Supremo estableció que la normativa anterior se extendía a todo vehículo rodante carente de motor propio y que es unido a otro para su movimiento.  En *Marín v. American Int'l Ins. Co.*, 137 DPR 356 (1994) se concluyó lo mismo en cuanto a una embarcación que era trasladada en un remolque.

-E-

La prueba de referencia es aquella declaración que no sea la que la persona declarante hace en el juicio o vista, que se ofrece en evidencia para probar la verdad de lo aseverado. Regla 801(c) de Evidencia, 32 LPRA Ap. VI, R. 801(c); véase, además, *Toledo Maldonado v. Cartagena Ortiz*, 132 DPR 249, 257 (1992). Como regla general, esta prueba no es admisible, salvo que por ley se disponga otra cosa. Regla 804 de Evidencia, 32 LPRA Ap. VI, R. 804. Esta norma general de exclusión está fundada en razones de falta de confiabilidad. Así pues, una declaración constitutiva de prueba de referencia presenta cuatro áreas de riesgo, a saber:

(1) [N]arración del evento – debe presumirse que el lenguaje utilizado refleja fielmente la percepción del declarante; (2) percepción del evento – debe presumirse que el evento ha sido claramente percibido y correctamente interpretado; (3) recuerdo del evento – debe presumirse que la memoria del declarante es fiel a lo observado; y (4) sinceridad del declarante – debe presumirse que el declarante desea decir la verdad.

*Toledo Maldonado v. Cartagena Ortiz, supra*, pág. 259. Véase, además, *Nieves López v. Rexach Bonet*, 124 DPR 427, 433 (1989) ("[la] inadmisibilidad [de la prueba de referencia] está atada a los riesgos inherentes que presenta relativos a la narración, percepción, recuerdo del acontecimiento y sinceridad del declarante.").

El profesor Chiesa sostiene que la razón que motiva la regla general de exclusión de prueba de referencia es la falta de confiabilidad de esta y su dudoso valor probatorio puesto que, de ordinario, este tipo de declaración no tiene las garantías de confiabilidad que se obtienen mediante un testimonio en corte. Esto es así, ya que la declaración de un testigo en un tribunal se hace bajo juramento, frente a la parte perjudicada por la declaración, frente al juzgador que ha de aquilatar su valor probatorio y está sujeta al contrainterrogatorio de las partes que tengan a bien hacerlo. E. L. Chiesa, *Tratado de Derecho Probatorio (Reglas de Evidencia de Puerto Rico y Federales)*, República Dominicana, Ed. Pubs. JTS, Tomo II, 2005, págs. 616 y 617.

No obstante, la Regla 805 de Evidencia, *supra*, R. 805, reconoce excepciones a la regla general de exclusión de prueba de referencia, aunque la persona declarante esté disponible como testigo. Entre estas excepciones se encuentra la de "récords e informes públicos," regulada por el inciso (H) de la referida regla, la cual dispone como sigue:

> Cualquier forma de récords, informes, declaraciones o compilaciones de datos de oficinas o agencias gubernamentales que describan (1) las actividades que se realizan en dicha oficina o agencia; **(2) los asuntos observados conforme al deber impuesto por ley de informar sobre dichos asuntos, excluyendo, sin embargo,**

**en los casos criminales, cualquier asunto observado por oficiales de policía y otro personal del orden público**; o (3) en casos o procedimientos civiles y en casos criminales en contra del gobierno, las determinaciones de hecho que surjan de una investigación realizada conforme a la autoridad que confiere la ley. **El informe se excluirá cuando las fuentes de información u otras circunstancias inspiren falta de confiabilidad**.

*Íd.,* R. 805 (H). (Énfasis nuestro).

El profesor Chiesa señala que esta excepción, permite la admisibilidad de informes evaluativos o de informes que estén basados en una investigación en los que el funcionario que los prepara descansa principalmente en información recibida de terceros. Como ejemplo, menciona el informe que hace la policía sobre un accidente o un delito. Chiesa nos dice que en la esfera federal se ha reconocido que el informe puede incluir las opiniones y conclusiones del funcionario que lo preparó e hizo la investigación. Según el tratadista, igual interpretación debe darse a la Regla 805 (H), supra, sobre el alcance de determinaciones de hecho. Sostiene que esta excepción está basada en que los funcionarios públicos gozan de una presunción de integridad y generalmente su testimonio en corte va a ser lo mismo que dice en el informe o dicho informe va a ser usado como escrito de pasada memoria o para refrescar memoria. Sin embargo, el informe podrá ser excluido, cuando la presunción de integridad del funcionario público parezca dudosa. La cláusula final de la sección citada establece que la evidencia será excluida, cuando las fuentes de información u otras circunstancias inspiren falta de confiabilidad. E. Chiesa, *Reglas de Evidencia de Puerto Rico*, 5ta. Ed., San Juan, Publicaciones JTS, 2009, págs. 264-266.

Por otro lado, la Regla 901 de Evidencia, *supra*, R. 901, establece el requisito de autenticar la prueba previo a su admisibilidad como evidencia. En específico, establece que "[e]l requisito de autenticación o identificación como una condición previa a la admisibilidad se satisface con la presentación de

evidencia suficiente para sostener una determinación de que la materia en cuestión es lo que la persona proponente sostiene." *Íd.* En otras palabras, autenticar no es otra cosa que establecer mediante evidencia extrínseca que la prueba que se pretende admitir es lo que el proponente sostiene que es. Sin embargo, "**la decisión sobre cuánto valor probatorio se debe otorgar a la evidencia admitida es una posterior y aparte que no debe confundirse con el análisis de autenticación**." *Rosado Reyes v. Global Healthcare Group, LLC.,* 205 DPR 796, 813 (2020). (Énfasis nuestro). (Nota al calce omitida).

A la luz de las normas jurídicas antes expuestas, procedemos a resolver.

**-III-**

En el presente caso, TOTE Maritime le atribuye al TPI la comisión de dos (2) errores por los cuales nos invita a intervenir con el dictamen en el que denegó su *Solicitud de Sentencia Sumaria.* No obstante, por estar íntimamente relacionados entre sí, procederemos a discutirlos conjuntamente.

En síntesis, arguye que tanto el Informe de Tránsito preparado por la Policía de Puerto Rico como el informe pericial desarrollado por el ingeniero Hernán Mercado-Corujo, establecen como incontrovertido el hecho de que el señor Flanagan Rosa fue quien provocó el accidente; además, sostiene que las recurridas no cuentan con prueba suficiente para continuar con la acción en su contra. Por consiguiente, aduce que el TPI abusó de su discreción al no acoger su solicitud para disponer del caso por la vía sumaria. Estando en la misma posición que el foro de instancia al revisar las mociones sobre sentencia sumaria, y luego de un análisis sosegado del expediente ante nos, entendemos que le asiste la razón. *Veamos.*

En primer lugar, TOTE Maritime sostiene que las recurridas admitieron la falta de negligencia al expresar en la *Demanda* que el

señor Flanagan Rosa fue quien impactó el camión.[12] Un análisis del expediente refleja que no hay duda sobre lo anterior. No obstante, resaltamos la expresión hecha por el propio peticionario en su *Petición de Certiorari* en cuanto a que "la única contención de la parte recurrida no es qui[é]n provocó el accidente, **sino si el Sr. Flanagan debió sobrevivir**."[13] En otras palabras, el asunto medular del presente caso radica en si la negligencia que provocó la muerte del señor Flanagan es una compartida. Ello dadas las contenciones de las recurridas en cuanto a que TOTE Maritime no cumplió con su deber jurídico de mantener el furgón en las condiciones exigidas por reglamentación federal y que esto contribuyó significativamente a la muerte del señor Flanagan.

La apropiada adjudicación de lo antedicho amerita la continuación de los procedimientos y la celebración de un juicio plenario en el que ambas partes tengan la oportunidad de presentar evidencia a su favor y confrontar aquella presentada en su contra, y, así, tras haber observado lo anterior, el tribunal pueda emitir un juicio valorativo sobre el asunto. Por lo tanto, somos del mismo criterio que el TPI en cuanto a que existen elementos sobre negligencia que ameritan ser dilucidados en un juicio en su fondo. Específicamente, si el furgón no contaba con un parachoques en su parte trasera como lo requieren reglamentaciones federales y si la muerte del señor Flanagan pudo haber sido evitada.

Atendiendo los señalamientos de la peticionaria, tenemos que ésta sostiene que el TPI obvió las Reglas de Evidencia al no admitir como evidencia el Informe de Tránsito ni dar por cierto su contenido. Si bien es correcta la contención de que el referido informe es un documento que la Regla 805 (H) de Evidencia, *supra*, exceptúa de la regla general de exclusión de prueba de referencia, ello no quiere decir

---

[12] Apéndice de la *Petición de Certiorari*, Anejo I, pág. 3, ¶ 11.
[13] *Petición de Certiorari*, pág. 9. (Énfasis nuestro).

que este no pueda ser controvertido. El que los tribunales permitan la admisión de evidencia no es una adjudicación sobre el valor probatorio de esta. En adición, el contenido del Informe de Tránsito tampoco determina si el peticionario está exento del alcance de responsabilidad civil al que aducen las recurridas. Esa determinación le corresponde al tribunal.

Igualmente, lo mismo aplica tanto al informe pericial del peticionario como al de las recurridas. Si bien los informes, tras ser autenticados, pueden ser admitidos durante el juicio, ello no significa que la parte adversa no pueda confrontarlos o impugnarlos, pues su admisión no es sinónimo de la adjudicación de sus respectivos valores probatorios.

Por último, la *Resolución* recurrida es clara en cuanto a que el TPI no denegó la solicitud de sentencia sumaria por estar basada en prueba de referencia inadmisible, sino porque no quedó convencido de la inexistencia de hechos materiales incontrovertidos en el presente caso, como, por ejemplo, si el furgón no contaba con un parachoques en su parte trasera y con ello, la muerte del señor Flanagan pudo haber sido evitada. En este sentido, ausente la determinación de ese hecho, no nos convence, en esta etapa, la contención de la peticionaria a los efectos de que el texto del Artículo 21.01 de la Ley de Vehículos y Tránsito lo ha eximido de responsabilidad de forma tal que proceda la desestimación por la vía sumaria de la causa de acción en su contra.

Por lo tanto, no encontramos la existencia de elementos que nos muevan a intervenir con la decisión del foro de instancia. Al contrario, entendemos que la misma fue un ejercicio sano de su discreción por lo que denegamos la expedición del auto de *certiorari*.

**-IV-**

Por los fundamentos que anteceden, se deniega la expedición del auto solicitado.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones